(No. 33191.—

THE NORTHERN TRUST COMPANY, Trustee, *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed December 20, 1954.*

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and ARTHUR N. HAMILTON, of counsel,) for appellant.

BENJAMIN F. MORRISON, of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The city of Chicago appeals to this court from a decree of the circuit court of Cook County entered in favor of certain property owners holding invalid and restraining the enforcement of certain amendments to the city's zoning ordinance as against their property. The property owners, plaintiffs-appellees, contended the amendments were in violation of the due process and equal protection of the law provisions of the State and Federal constitutions and in violation of the State constitution's provision prohibiting the taking of private property or damaging same for public use without just compensation.

The property involved, owned by The Northern Trust Company, as trustee under trust No. 16252, The Northern Trust Company, as trustee under trust No. 19588, and Raymond Donnersberger and Genevive Donnersberger, trustees under the last will and testament of George Donnersberger, deceased, is located on the southwest side of Chicago bounded by West Fifty-first Street and the Indiana Harbor Belt Railroad and Chicago & Western Indiana railroad tracks on the north, South Harding Avenue on the east, West Fifty-third Street on the south and South Pulaski Road (South Crawford Avenue) on the west. It contains approximately 350,000 square feet in area and has been continuously owned by the present owners and their predecessors in title since 1910.

The original Chicago zoning ordinance of 1923 zoned the entire tract for manufacturing use, which included the use of said property as a truck terminal. A 1941 amendment changed the use for 125 feet fronting on South Pulaski Road of the westerly portion of the subject property to business use, for most of the easterly portion to residential use, and for a small portion of the north end to commercial use, all of which uses did not permit the construction of a truck terminal. A 1950 amendment established motor freight truck terminal districts, none of which districts included any portion of the subject property. The plaintiff property owners complain that these restrictive amendments, which deny to their property the right to be used for truck terminal purposes, are unconstitutional.

The issues were heard by a master in chancery, whose findings and recommendations were favorable to plaintiffs and the basis for the lower court's decree. The decree held the 1941 and 1950 zoning amendments void and unconstitutional as applied to plaintiffs' property for the reasons that they result in the taking and damaging of property for public use without compensation, deprive plaintiffs of their liberty and property without due process of law and deny to them the equal protection of the law in violation of State and Federal constitutions. The city was enjoined from enforcing provisions of the amendments against plaintiffs' property, and the decree ordered issuance of permits necessary to construct motor freight terminals or other structures permitted by the zoning ordinance prior to April 21, 1941.

The complaint, among other things, alleged that under the provisions of the Chicago zoning ordinance, as amended, the city is classified into the following districts: (1) Family residence, (2) Duplex residence, (3) Group house, (4) Apartment, (5) Specialty shop, (6) Business, (7) Commercial, (8) Manufacturing, (9) Industrial, and (10) Motor freight terminal. Prior to the 1950 amendment the motor freight terminal classification was included in manu-

facturing districts. Plaintiffs assert that they and their predecessors held their property for manufacturing and industrial purposes and that it was so zoned under the original ordinance. It is also asserted that the property surrounding the subject tract was likewise zoned for manufacturing use.

The complaint then sets out the foregoing constitutional objections and avers that the city threatens to enforce the said amendments and denies to the property owners their right to use their property for the purpose of constructing a motor freight terminal thereon; that adjacent to the subject property on the north are railroad tracks and property zoned for manufacturing use, and across the street on the west side of Pulaski Road are located various motor freight terminals and, by reason of the same, the use of plaintiffs' property for business or residential purposes is rendered impracticable and undesirable, thereby clouding their title and preventing its sale and use at its highest and best use.

A review of the record of this case reveals that the involved tract is unimproved and that the physical facts are in accordance with the prior statements herein. The frontage on South Pulaski Road is 1177 feet and the tract is 284 feet in depth. Various truck terminals occupy space directly across from this property on the west side of Pulaski Road. Directly north of the subject property on the east side of Pulaski Road, across the Indiana Harbor Belt Railroad and Chicago & Western Indiana railroad tracks, is another truck terminal constructed and put in operation with knowledge and consent of the city. On property situated approximately one mile north of plaintiffs' property is another truck terminal located in a district not zoned for truck terminal purposes. To the east of plaintiffs' property is a fairly well developed single-family residence district. The area west of the truck terminals on the west side of South Pulaski Road is mixed industrial and residential in character. To the east of the

single-family residence district is located the Grand Trunk railroad yards, roundhouses and shops, which have existed there for more than forty years. The railroad tracks mentioned are at street level and the western tracks of the Grand Trunk Railway are the main line, high speed running tracks of that railroad. The other two railroads use their tracks for switching purposes and have a heavy volume of traffic. West of Pulaski Road the area is occupied by many industries, manufacturing plants and lumber yards, which make use of these rail facilities. The residence district was formerly a manufacturing one but changed after World War II. The city's main argument appears to be the harmful effect that might occur to the property values in this residence district if plaintiffs' property were used for truck terminal or manufacturing purposes.

Much evidence was heard concerning the traffic conditions, particularly on South Pulaski Road, the general character of the neighborhood, highest and best uses, valuations, railroad traffic and uses, etc. Each side produced expert witnesses to sustain its contentions. We feel that no good purpose can be served by narrating in detail the substance of the testimony of each of these witnesses. After examining the testimony of all of the witnesses, together with the various plats, exhibits and photographs in evidence, we are satisfied that the master in chancery and trial court were justified in their conclusions. There is naturally a conflict of facts in the testimony in cases of this nature and the credibility of witnesses is therefore of great importance. We have often declared that the triers of fact are in a superior position to that of a court of review in such a situation. When testimony is contradictory it is well established that in a trial without a jury the determination of the credibility of witnesses and the weight to be accorded their testimony are matters for determination of the trial court and its findings will not be disturbed unless they are manifestly against the weight of the evidence.

It appears from a fair appraisal of all the testimony and evidence in this case that the highest and best use of the subject property is for manufacturing and truck terminal use. The character of the surrounding neighborhood makes this an inevitable conclusion. It is easily understandable that the value of such a tract of land is greatly depreciated when restricted to residence and commercial uses. Because of the established character of the surrounding property and its industrial and manufacturing uses and the circumstances bearing upon such factors as traffic conditions, noises, odors, etc., it would offer little appeal to attract residence dwelling. The great depreciation in value in consequence of the restricted use caused by the 1941 and 1950 amendments to the Chicago zoning ordinance, as testified to by plaintiffs' witnesses, is substantiated by the record. The master found this depreciation to be one third of its former value. As stated in *Hannifin Corp.* v. *City of Berwyn,* 1 Ill. 2d 28, it is not within the power of any municipal body to execute into law a rule or classification that is unreasonable, capricious or arbitrary. Insofar as the property owner is concerned he has the right to rely upon the rule of law that the classification of his property will not be changed unless the change is required for public good. (*Zilien* v. *City of Chicago,* 415 Ill. 488; *Baltis* v. *Village of Westchester,* 3 Ill. 2d 388.) Every owner has a right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. This is both a liberty and a property right. (*Village of La Grange* v. *Leitch,* 377 Ill. 99.) Although a presumption of validity obtains in respect to the 1941 and 1950 zoning ordinance amendments, where it is affirmatively and clearly shown, as in the instant case, that they are unreasonable and confiscatory as relating to the subject property, a court of review will not hesitate to declare such amendments unconstitutional in respect to the particular property involved.

To sustain the validity of such zoning amendments there must be a real and substantial relation to the public health, safety, morals or general welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321.) Under the evidence in the particular instant case we do not feel that the putting of the subject property to its highest and best use will cause such a financial loss to the entire neighborhood as to come within the rule announced in *Neef v. City of Springfield*, 380 Ill. 275. The residential dwellings already constructed are bounded by many nonresidential uses and no substantial change will be effected by the use of plaintiffs' property as desired. To deny the particular piece of property to be used for truck terminal purposes when such a terminal exists directly across the street and another directly to the north is clearly arbitrary and unreasonable. A zoning ordinance may be valid in its general aspects, and yet, as to a particular state of facts involving a particular parcel of real estate affected thereby, be so clearly arbitrary and unreasonable as to result in confiscation, thereby justifying the interposition of a court of equity to restrain the enforcement of the ordinance. If the gain to the public is small, we have said, when compared with the hardship imposed upon individual property owners, no valid basis for an exercise of the police power exists. (*Miller Brothers Lumber Co. v. City of Chicago*, 414 Ill. 162.) It is the general rule in zoning territory of the character before us to fix dividing lines of districts in such a way as to avoid making one side of a main artery of travel purely residential when the opposite side is already so used as business property as to establish its character in that regard. To so zone property will almost inevitably lead to such destruction of values as to be confiscatory. *Forbes v. Hubbard*, 348 Ill. 166.

Plaintiffs and their predecessors in title owned the subject property for more than forty years, when it was zoned

for manufacturing purposes and before most of the residences to the east were built. This court cannot fail to recognize the acquisition of property by persons for certain uses or intended uses in reliance upon existing regulations and ordinances. Unless the general welfare is served by the change of existing zoning ordinances property owners should be held secure in their rights of use in accordance with the classification at the time of acquisition and holding. To be a valid exercise of the public police powers, amendments changing existing zoning classifications must bear a reasonable relation to the public health, comfort, morals, safety and general welfare. We are in agreement with the lower court and find that the particular amendments, as they concern plaintiffs' property, are unreasonable, arbitrary and void, and result in the taking and damaging of their property for public use without compensation, depriving them of their liberty and property without due process of law and denying plaintiffs equal protection of the law in violation of the fifth amendment of our Federal constitution and sections 2 and 13 of article II of our State constitution. The restrictions in the Chicago zoning ordinance as amended, insofar as they prohibit the use of plaintiffs' property for the uses for which it was formerly zoned, are not necessary to the end that adequate light, pure air, safety from fire and other dangers may be secured, to the end that the taxable value of any land or building in the area may be conserved, or that congestion in the public streets may be lessened or avoided, or that the public health, safety, comfort, morals or general welfare be promoted. For the foregoing reasons the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*