Docket No. 95118–Agenda 16–May 2003.

THE VILLAGE OF LAKE VILLA, Appellant, v. DOROTHY STOKOVICH 
et al.
, Appellees.

Opinion filed February 20, 2004.

JUSTICE GARMAN delivered the opinion of the court:

In 1998, plaintiff, Village of Lake Villa, sought authorization from the circuit court of Lake County, pursuant to section 11–31–1 of the Illinois Municipal Code (Code) (65 ILCS 5/11–31–1(a) (West 1996)), to demolish a structure owned by the defendants, Dorothy Stokovich, as trustee under a trust agreement dated September 16, 1992, and Nick Stokovich, her son. After a hearing, the circuit court entered an order of demolition and the property owners appealed. After a lengthy and convoluted procedural history, the appellate court eventually found section 11–31–1 of the Code unconstitutional on due process grounds. 334 Ill. App. 3d 488. We reverse.

BACKGROUND

The structure at issue is approximately 100 years old and was used from 1949 until 1977 as a nursing home. It was subsequently occupied for several years by a caretaker and then by Nick Stokovich. It has been unoccupied since at least 1992.

In 1997, the Village informed the property owners by means of a “red card” posted on the building and a letter sent to Dorothy Stokovich that the building was unsafe, abandoned, dilapidated, and animal infested. The letter informed her that the building must either be brought into conformance with the building code or be demolished. In addition, she was informed that repair work could not commence until the building had undergone an inspection and the proper permits were obtained. Further correspondence between the Village and the property owners ensued. Eventually, when no permits were sought, the Village filed a complaint for demolition.

A thorough review of the evidence reveals that the summary contained in the appellate court opinion is accurate. See 334 Ill. App. 3d at 491-98. The circuit court found the building unsafe and dangerous, based on testimony regarding the risk of communicable disease evidenced by animal droppings, the presence of methane gas, potential contamination of the Village’s water supply, and structurally weak ceiling rafters. The circuit court also found that the value of the building was approximately $100,000; the cost of repair would be approximately $75,000; and such an expenditure would constitute “substantial renovation” of the building. The circuit court entered an order of demolition.

On appeal, the property owners argued that section 11–31–1 of the Code, which permits demolition of “dangerous and unsafe buildings or uncompleted and abandoned buildings” (65 ILCS 5/11–31–1(a) (West 1996)), violates the due process guarantees of both the United States and Illinois Constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§ 2, 15). Specifically, they contended that ordering demolition upon a finding that the building is dangerous and unsafe, without first allowing the property owner to repair the property, constitutes an unlawful taking without due process and without just compensation.

The appellate court held the statute unconstitutional “because it authorizes a municipality to take private property without compensation and without due process by demolishing or requiring demolition without first giving the owner the choices of repairing the property within a reasonable time and of spending whatever it costs to bring the property into compliance.” 334 Ill. App. 3d at 503-04. The appellate court agreed with the property owners that, absent an “imminent threat to the safety of persons or property” (334 Ill. App. 3d at 502), they should have been afforded reasonable time 
after
 the circuit court’s finding that the structure was dangerous and unsafe in which to make the necessary repairs. Further, the property owners argued, and the appellate court agreed, that whether the building was suitable for repair was the owners’ decision, not a question to be answered by the court. In effect, the statute unconstitutionally denies them “the opportunity of doing whatever is necessary” to repair the building “at whatever cost” they are willing to spend. 334 Ill. App. 3d at 503.

As appellant, the Village make five arguments to this court: (1) the property owners’ constitutional challenge should not be heard because they failed to comply with Supreme Court Rule 19 (134 Ill. 2d R. 19); (2) the property owners lack standing to raise the constitutional challenge; (3) section 11–31–1 does not violate due process; (4) even if the statute is found to violate due process, the appellate court’s ruling is internally inconsistent and overbroad and should be corrected by this court; and, finally, (5) the order for demolition should stand because the structure at issue in this case cannot possibly be brought into conformance with current zoning requirements.

Pursuant to Supreme Court Rule 345 (155 Ill. 2d R. 345), we have permitted the City of Chicago and the Illinois Municipal League to file a brief 
amicus curiae
. 
Amici
 argue that section 11–31–1 is a constitutionally permissible exercise of municipal police power.

COMPLIANCE WITH RULE 19

The property owners first raised the constitutional issue in their April 14, 1998, motion to dismiss the Village’s complaint for demolition. The record does not contain the Village’s response to the motion to dismiss. However, the record does contain the property owners’ reply to that response, which does not mention a Rule 19 objection having been made. Thus, it appears that the Village did not invoke Rule 19 in the trial court.

The property owners raised the constitutional issue again on appeal and the Village responded that the constitutional claim was barred for failure to comply with Rule 19. Thereafter, the property owners sought leave from the appellate court to comply with Rule 19. The appellate court granted leave to comply on February 15, 2001. On February 26, 2001, the property owners filed notice in the appellate court that they had given notice to the Attorney General of their constitutional challenge to a state statute, as required by Rule 19. The Attorney General responded by letter, advising the property owners that he declined to intervene in the matter. A copy of the letter was filed with the appellate court on March 16, 2001. In the end, the appellate court declined to address the constitutional challenge to the statute based on its factual finding that the property owners had the opportunity to choose whether to repair or demolish their building prior to the Village’s demand for demolition. 
Village of Lake Villa v. Stokovich
, No. 2–00–0943 (2001) (unpublished order under Supreme Court Rule 23).

The property owners then filed a petition for leave to appeal, which this court denied on February 6, 2002. However, this court entered a supervisory order directing the appellate court to vacate its affirmance of the demolition order and to address the property owners’ claim that section 11–13–1 is unconstitutional. 
Village of Lake Villa v. Stokovich
, 198 Ill. 2d 593 (2002) (supervisory order).

When the Village again argued to the appellate court that the property owners’ constitutional claim was barred by failure to comply with Rule 19, the appellate court concluded that because the property owners had, by that time, complied with Rule 19, their constitutional claim was not barred. 334 Ill. App. 3d at 499. The appellate court eventually held that section 11–31–1 is unconstitutional and this court granted the Village’s petition for leave to appeal. Before this court, the Village again asserts that the matter was not properly before the appellate court due to the property owners’ failure to satisfy the requirements of Rule 19, and, thus, should not be considered by this court.

This court has never before had occasion to address the effect of noncompliance, or delayed compliance, with Supreme Court Rule 19. Under this rule, a litigant challenging the constitutionality of a statute, ordinance, or administrative regulation must serve notice of the challenge upon the Attorney General or other affected agency or officer. 134 Ill. 2d R. 19(a). “The notice shall identify the particular statute *** and shall briefly describe the nature of the constitutional challenge.” 134 Ill. 2d R. 19(b). The rule also contains a timing requirement: “The notice shall be served at the time of suit, answer or counterclaim, if constitutionality is raised at that level, or promptly after the constitutional question arises as a result of a circuit or reviewing court ruling or judgment.” 134 Ill. 2d R. 19(b). The purpose of the notice is to give the affected agency or officer the opportunity to intervene in the proceeding for the purpose of defending the constitutionality of the statute, ordinance, or administrative regulation. 134 Ill. 2d R. 19(c). Because the property owners did eventually comply with Rule 19, and because no issue is raised as to the content of the notice, the Village’s claim must be understood to be based on the timing of the notice.

The Village claims that its due process rights were violated when the appellate court granted leave to the property owners to comply with Rule 19 after the Village had already filed its brief. The Village does not explain how its due process rights were violated and the case it cites as support, 
Delarosa v. Approved Auto Sales, Inc.
, 332 Ill. App. 3d 623 (2002), is not relevant. The underlying issue in 
Delarosa
 was a contract dispute between a used-car buyer and a car dealer. The appellate court found that the buyer’s due process rights were violated when the trial court, after first denying his motion to amend his pleadings to include a breach of contract claim, reversed itself after he had rested his case and then entered a directed judgment for the dealer. 
Delarosa
, 332 Ill. App. 3d at 626. Because the buyer prepared for and conducted the trial with the understanding that his contract claim was not going to be allowed, the court’s untimely reversal of its earlier erroneous decision resulted in a violation of his due process rights. 
Delarosa
, 332 Ill. App. 3d at 626. In contrast, the Village has not demonstrated that it was prejudiced in any way by the timing of the property owners’ compliance with Rule 19. The Village had long been aware of the property owners’ constitutional claim and did not seek leave to supplement its brief after learning that the Attorney General had been given notice and declined to intervene. Thus, it was not prejudiced in its effort to respond to the constitutional challenge. In addition, the appellate court did not reach the constitutional issue until ordered to do so by this court, long after the appellate court allowed the property owners to comply with Rule 19. The Village had ample opportunity to address the constitutional issue before the appellate court.

Nevertheless, the Village correctly observes that strict compliance with supreme court rules is generally required: “The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written.” 
Bright v. Dicke
, 166 Ill. 2d 204, 210 (1995). See also 
Roth v. Illinois Farmers Insurance Co.
, 202 Ill. 2d 490 (2002) (requiring strict compliance with the affidavit requirement of Rule 315(b)).

In their motion for leave to serve late notice, the property owners acknowledged their failure to serve notice on the Attorney General at the time they first raised the constitutional question in their motion to dismiss. They explained that they had understood the requirement of notice to the “affected agency” (134 Ill. 2d R. 19(b)) to be fulfilled because the municipality was already party to the suit. Rule 19, however, has generally been understood to require notice to the Attorney General whenever the constitutionality of a state statute is challenged. See, 
e.g.
, 
Poullette v. Silverstein
, 328 Ill. App. 3d 791, 796 (2002) (Rule 19 requires “that notice be given to the Attorney General by any party questioning the constitutionality of a state statute in a proceeding where the Attorney General is not already a party”). The appellate court accepted the property owners’ explanation and granted them leave to serve late notice. The question presented to this court is, therefore, whether the appellate court has the discretion to permit such a deviation from the clear requirements of Rule 19. Rule 19 was adopted in 1986. Shortly thereafter, this court commented on the purpose of the rule:

“This rule recognizes the significance of the State’s interest in defending the constitutionality of its laws by requiring a litigant to serve the Attorney General with notice that he intends to challenge the constitutionality of a statute. This notice, in turn, affords the Attorney General the opportunity to petition for leave to intervene in the action in the circuit court. The adoption of Rule 19 should obviate the need for the State’s intervention in an action in a reviewing court in future cases.” 
Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.
, 118 Ill. 2d 389, 400 (1987).

The property owners argue that it was within the discretion of the appellate court to permit late compliance with Rule 19, notwithstanding the requirement that “notice shall be served at the time of suit, answer or counterclaim, if constitutionality is raised at that level.” 134 Ill. 2d R. 19(b). They cite 
McMichael v. Michael Reese Health Plan Foundation
, 259 Ill. App. 3d 113 (1994), in which the defendant, Health Plan, did not comply with Rule 19 until after it had raised a constitutional challenge to a statute on appeal. The appellate court rejected plaintiff’s argument that compliance with Rule 19 is jurisdictional. 
McMichael
, 259 Ill. App. 3d at 115. However, as the Village correctly observes, the discussion of Rule 19 in 
McMichael
 was 
dicta
, because the appellate court resolved the matter without reaching the constitutional question.

The property owners also rely on the more recent decision in 
Poullette
, where the plaintiff raised a constitutional question regarding a provision of the Code of Civil Procedure for the first time on appeal. The defendant argued that the constitutional claim was waived for failure to raise it before the trial court and that the plaintiff had also failed to comply with Rule 19. 
Poullette
, 328 Ill. App. 3d at 796. The appellate court chose to address the constitutional question, notwithstanding failure to notify the Attorney General, because the issue was of constitutional dimension and had been fully briefed and argued by the parties. 
Poullette
, 328 Ill. App. 3d at 797. In the end, the appellate court found the challenged statute constitutional. 
Poullette
, 328 Ill. App. 3d at 797.

The Village offers several cases in which the appellate court has found failure to comply with Rule 19 to be the equivalent of waiver. See 
Villareal v. Peebles
, 299 Ill. App. 3d 556, 561 (1998) (failure to raise constitutional issue in trial court and late compliance with Rule 19 not excused); 
Serafin v. Seith
, 284 Ill. App. 3d 577, 587 (1996) (issue waived for failure to comply with Rule 19; “[m]oreover,” the constitutional argument was “without merit”); 
Witt v. Jones & Jones Law Offices, P.C.
, 269 Ill. App. 3d 540, 545 (1995) (constitutional arguments waived for failure to raise them in trial court and failure to comply with Rule 19; “[f]urther,” the constitutional arguments were “without merit”).

We conclude that a party’s failure to timely comply with Rule 19 does not deprive the court of jurisdiction to consider the constitutional issue. However, failure to strictly comply with the rule may result in waiver. Nevertheless, because waiver is a limitation on the parties, not on the court (
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 518-19 (2000)), a circuit court or the appellate court has the discretion to permit late compliance with Rule 19 and thereafter to address the constitutional issue if the purpose of the rule has been served. See, 
e.g.
,
 Pappas v. Calumet City Municipal Officers’ Electoral Board
, 288 Ill. App. 3d 787, 791 (1997) (declining to address constitutional challenge to state statute where challenging party had not served appropriate notice on Attorney General and did “not seek leave to do so on appeal,” because the Attorney General had not been afforded “the opportunity for meaningful participation”).

In the present case, the appellate court did not abuse its discretion by permitting late compliance with Rule 19. The purpose of Rule 19 was fulfilled when the Attorney General was offered and declined an opportunity to participate. Indeed, when this court issued the supervisory order directing the appellate court to consider the constitutional claim, it was already a matter of record that the Attorney General had not objected to receiving late notice and was not interested in intervening to defend the constitutionality of section 11–31–1.

DEFENDANTS’ STANDING TO RAISE CONSTITUTIONAL CLAIM

“The doctrine of standing is intended to assure that issues are raised only by those parties with a real interest in the outcome of the controversy. [Citation.] To have standing to challenge the constitutionality of a statute, one must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute. [Citation.] The claimed injury must be (1) distinct and palpable; (2) fairly traceable to defendant’s actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. [Citations.]” 
Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago
, 189 Ill. 2d 200, 206-07 (2000).

The Village asserts that because the property owners had ample opportunity to repair the structure prior to the entry of the demolition order, they have not been harmed by the alleged defect in the statute, and, therefore, they lack standing to attack the constitutionality of section 11–31–1.

The property owners claim that they were not obliged to repair or demolish the structure until after the matter was adjudicated and the structure found to be dangerous and unsafe. Thus, they argue, they were entitled to a reasonable amount of time after the Village’s allegations were proven in which to determine whether they were willing to invest the amount of money that would be required and, in addition, a reasonable amount of time to make the repairs if they chose to do so. Because the statute does not provide for such an opportunity to repair 
after
 the entry of the demolition order, they contend the statute denies them due process.

We conclude that the property owners do have standing to raise the claim that a property owner is constitutionally entitled to the opportunity to decide whether to make repairs and to a reasonable amount of time to do so after an adjudication that the structure is dangerous and unsafe. Indeed, such a claim could be made only by a property owner who has resisted initiating repairs until after the circuit court has ruled on the merits and who, as a result, is in immediate danger of having his building demolished. The property owners have demonstrated they are in immediate danger of sustaining a palpable injury, fairly traceable to the Village’s actions, which will be remedied if this court grants the relief sought. See 
Chicago Teachers Union
, 189 Ill. 2d at 206-07.

The Village makes a separate, but related, argument that the property owners have waived any challenge to the constitutionality of the statute because they “did not ask [the circuit court] for the relief they now say they were denied.” Not only did they fail to undertake repairs after they first received notice from the Village of the need to do so, they neither undertook repairs during the pendency of the litigation, nor sought a stay either before or after the circuit court entered the order of demolition. Thus, the Village argues, they may not argue on appeal that they were denied the opportunity, after the building was ruled dangerous and unsafe, to decide whether they were willing to spend whatever it would take to save the structure from demolition. The Village cites 
Western Casualty & Surety Co. v. Brochu
, 105 Ill. 2d 486, 500 (1985), in which this court stated that it is “axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal.”

Even if the property owners’ failure to request the opportunity to which they claim they are constitutionally entitled constitutes waiver of this claim, the rule of waiver serves as a limitation on the parties and not on the court. This court “is not precluded from considering issues not properly preserved by the parties, and indeed has ‘the responsibility *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system.’ ” 
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 251 (1994), quoting 
Hux v. Raben
, 38 Ill. 2d 223, 225 (1967). Because the appellate court addressed the constitutional question pursuant to a supervisory order of this court directing it to do so, we choose to address the issue on its merits.

CONSTITUTIONALITY OF SECTION 11–31–1

The constitutionality of a statute is a question of law and is, thus, reviewed 
de novo
. 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57 (2001). In general, statutes carry a strong presumption of constitutionality (
People ex rel. Ryan v. The World Church of the Creator
, 198 Ill. 2d 115, 120 (2001)), and the party challenging the statute has the burden of rebutting that presumption (
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998)). In addition, this court has a duty to uphold the constitutionality of a statute if it is reasonably possible to do so. 
City of Chicago v. Morales
, 177 Ill. 2d 440, 448 (1997).

When the basis of the constitutional challenge is an alleged violation of the due process clauses of the state or federal constitutions, the court will ordinarily apply the rational basis test, under which the statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. 
Tully v. Edgar
, 171 Ill. 2d 297, 304 (1996). If, however, the challenged legislation implicates a fundamental right, the presumption of constitutionality is weaker, and far more demanding scrutiny is required. 
Tully
, 171 Ill. 2d at 304. Under the strict scrutiny standard, a statute violates due process unless it is narrowly tailored to serve a compelling state interest. 
Tully
, 171 Ill. 2d at 304-05.

The appellate court applied strict scrutiny in the present case, citing 
Tully
 for the proposition that “where the right infringed upon is among those considered a ‘fundamental’ constitutional right, 
such as a property right
, courts subject the statute to ‘strict scrutiny.’ ” (Emphasis added.) 334 Ill. App. 3d at 500-01, citing 
Tully
, 171 Ill. 2d at 304. The fundamental constitutional right at stake in 
Tully
, however, was the right to vote.

The Village argues for application of the rational basis test because “there is no fundamental right to allow a building to become in such disrepair as to become dangerous.” Therefore, the Village asserts, section 11–31–1 is a valid exercise of the state’s police power, citing 
City of Carbondale v. Brewster
, 78 Ill. 2d 111 (1979). In 
City of Carbondale
, this court found an ordinance that required owners or occupants to remove snow and ice from sidewalks abutting their properties to be a valid exercise of the city’s police power because it was a reasonable means to further a legitimate state interest. 
City of Carbondale
, 78 Ill. 2d at 117-18.

Amici
 have also argued that once the trial court made a finding that the property was dangerous and unsafe, the Village’s police power came into play and that review of the exercise of that power should be conducted under a rational basis standard, citing 
Camara v. Municipal Court
, 387 U.S. 535, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), and other cases in which the United States Supreme Court and federal courts of appeals have applied the rational basis test to the exercise of police power affecting interests in real property. 
Amici
 liken the state’s power to demolish dangerous and unsafe structures to the killing of diseased livestock and the burning of infected plants, both of which are “time-honored use[s] of a state’s police power,” quoting 
McKenzie v. City of Chicago
, 118 F.3d 552, 557 (7th Cir. 1997).

The property owners acknowledge that although “property” is specifically referred to in the due process clauses of both the state and federal constitutions, not all property rights are deemed fundamental. See 
People v. Lindner
, 127 Ill. 2d 174, 184 (1989) (recognizing that possession of a driver’s license is a nonfundamental property interest and applying the rational basis test to invalidate a statute mandating revocation of a driver’s license upon conviction of certain offenses). They argue, however, that the property interest at issue here is fundamental because it involves real property and, thus, the statute is deserving of strict scrutiny. They also rely on 
Hanna v. City of Chicago
, 331 Ill. App. 3d 295 (2002), in which our appellate court held that a facial challenge to the constitutionality of a zoning ordinance is governed by the more stringent “substantial relationship” test, rather than by the rational basis test.

In 
City of Aurora v. Meyer
, the property owner challenged the constitutionality of this section, claiming that it “purports to authorize the city to take private property without just compensation and without due process of law.” 
City of Aurora v. Meyer
, 38 Ill. 2d 131, 132 (1967). Because this court resolved the issue in the property owner’s favor as a matter of statutory interpretation, it was not necessary to reach the constitutional question. As a result, we have not yet had occasion to determine whether strict scrutiny is required or whether rational basis review of section 11–31–1 will suffice.

This court has long acknowledged that “[e]very owner has a right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. This is both a liberty and a property right.” 
Northern Trust Co. v. City of Chicago
, 4 Ill. 2d 432, 437 (1954). The phrase “restraint necessary to secure the common welfare” refers to the police power of the state under which the state “may act to regulate, restrain or prohibit that which is harmful to the public welfare even though the regulation, restraint or prohibition might interfere with the liberty or property of an individual.” 
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357, 368 (1985). In 
Chicago National League Ball Club
, this court applied the rational basis test to a statute and ordinance, enacted pursuant to the police power, that had the effect of prohibiting nighttime athletic events at Wrigley Field in Chicago. The challenged provisions were intended to abate a public nuisance–the “intolerable noise” created by nighttime sporting events. 
Chicago National League Ball Club
, 108 Ill. 2d at 364. We found the statute and the ordinance constitutional. 
Chicago National League Ball Club
, 108 Ill. 2d at 372.

Similarly, we applied the rational basis test to legislation regulating land use in
 Beverly Bank v. Illinois Department of Transportation
, 144 Ill. 2d 210 (1991). The challenged statute, which we found constitutional, prohibited new residential construction on a flood plain. The legislative purpose of this exercise of the police power was to reduce the potential for flood damage, to protect the health and welfare of residents, and to reduce the need for emergency relief services. 
Beverly Bank
, 144 Ill. 2d at 226.

Section 11–31–1 of the Code is in some respects similar to the statute and ordinance at issue in 
Chicago National League Baseball Club
. That is, its purpose is to abate a public nuisance. And, like the statute at issue in 
Beverly Bank
, section 11–31–1 interferes with a property owner’s ability to choose how he would use his land. We agree with the Village that a property owner does not have a fundamental right to permit his property to fall into such disrepair as to create a risk to the health and safety of the public. We conclude that, like the statutes at issue in
 Chicago National League Baseball Club 
and
 Beverly Bank
, section 11–31–1 was enacted pursuant to the state’s police power and is, therefore, subject to review under a rational basis standard and, therefore, the property owners have the burden of overcoming the presumption of constitutionality.

In applying the rational basis test, we must first consider whether the public interest the statute is intended to serve is a legitimate interest, then determine whether the statute bears a rational relationship to that interest, and, finally, determine whether the method chosen by the legislature to protect or further that interest is reasonable. 
Arangold v. Zehnder
, 204 Ill. 2d 142, 147 (2003). Rational basis review is highly deferential to the judgments made by the legislature.
 Cutinello v. Whitley
, 161 Ill. 2d 409, 421-22 (1994). Thus, we are not concerned with the wisdom of the statute or with whether it is the best means to achieve the desired result. 
People v. Shephard
, 152 Ill. 2d 489, 503 (1992). So long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld.
 Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d 322, 332 (1989). The property owners do not dispute that section 11–31–1 is intended to serve a legitimate interest. Rather, they argue that “any cost limitation on the right to repair is arbitrary and unreasonable and not rationally related to the public interest involved.” They cite several cases from other jurisdictions in support of this position. The cases cited, however, do not assist us in our inquiry because, in each case, the state statute or local ordinance found unconstitutional allowed an officer of the municipality to issue an order of demolition. See, 
e.g.
, 
Hawthorne Savings & Loan Ass’n v. City of Signal Hill
, 19 Cal. App. 4th 148, 23 Cal. Rptr. 2d 272 (1993) (before the city’s planning director could order demolition, property owner was entitled to choose between repairing and demolishing buildings, and reasonable time to make repairs if owner chose to do so); 
Shaffer v. City of Atlanta
, 223 Ga. 249, 154 S.E.2d 241 (1967) (municipal officials denied property owner due process by ordering him to demolish building and denying him building permits to repair the alleged defects before giving him a hearing); 
Horne v. City of Cordele
, 140 Ga. App. 127, 230 S.E.2d 333 (1976) (ordinance permitting city director of community development to order demolition of structure if unfit for human habitation and cost of repair would exceed 50% of value found unconstitutional; owner entitled to opportunity to repair);
 Washington v. City of Winchester
, 861 S.W.2d 125 (Ky. App. 1993) (city inspector may not order demolition of building based on finding that cost of necessary repairs would exceed 100% of current value of structure before giving owner the opportunity to repair the building); 
Horton v. Gulledge
, 277 N.C. 353, 177 S.E.2d 885 (1970) (city’s inspector of buildings may not order demolition of dwelling based on his determination that building is unfit for human habitation and cannot be brought up to standard without repairs costing in excess of 60% of present value), 
overruled on other grounds
, 
State v. Jones
, 350 N.C. 520, 290 S.E.2d 675 (1982);
 Herrit v. Code Management Appeal Board
, 704 A.2d 186 (Pa. Commw. 1997) (ordinance that permits city solicitor to order owner to completely raze building within 60 days if the cost of repair would exceed 100% of current value unconstitutional; owner is entitled to notice and opportunity to repair regardless of cost).

Under section 11–31–1, however, an order of demolition may not be issued by a municipal official. Instead, the municipality must give at least 15 days notice to the property owner of the need to “put the building in a safe condition or to demolish it.” 65 ILCS 5/11–31–1(a) (West 1996). Only after such notice has been given may the municipal authorities apply to the circuit court for an order of demolition. In that proceeding, the burden of proof is on the municipality as petitioner to prove that the building is “dangerous and unsafe” or “uncompleted and abandoned.” Only after meeting that burden may the municipality be authorized to “demolish, repair, or enclose or cause the demolition, repair, or enclosure” of such a building (65 ILCS 5/11–31–1(a) (West 1996)). Whether demolition is appropriate is governed by our decision in 
City of Aurora
.

In 
City of Aurora
, we noted that section 11–31–1 provides for repair or demolition in the alternative and, thus, “contemplates repair where feasible and demolition where the state of deterioration is such that repairs would amount to a substantial reconstruction.” 
City of Aurora
, 38 Ill. 2d at 136. Even after the circuit court finds that the municipality has met its burden of proving the structure dangerous and unsafe, the court still may not order demolition unless substantial reconstruction would be necessary to correct the defects.
 City of Aurora
, 38 Ill. 2d at 137. If the court finds that the defects may readily be remedied, “demolition should not be ordered without giving the owners a reasonable opportunity to make the repairs.” 
City of Aurora
, 38 Ill. 2d at 137. In contrast, if the structure is “beyond reasonable repair,” the court may authorize “the extreme remedy of demolition.” 
City of Aurora
, 38 Ill. 2d at 137. Under these rules, evidence proffered by the property owner relating to the cost of repair must be considered by the court before authorizing demolition. 
City of Aurora
, 38 Ill. 2d at 137.

Next, we must consider whether section 11–31–1, as construed in 
City of Aurora
, bears a rational relationship to the legitimate state interest. The property owners claim that any consideration by the court of the cost of repairs is not rationally related to the public interest served by the statute. That is, they contend that after an adjudication that a building is dangerous and unsafe, a property owner must be given an opportunity to repair, regardless of cost. As noted above, the rational basis test is highly deferential to the judgments made by the legislature. We are not concerned with whether it would have been wiser for the legislature to enact a statute that contained a provision for an additional opportunity to repair after the circuit court finds the structure dangerous and unsafe, but before the wrecking ball swings. So long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld.
 Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d 322, 332 (1989).

We conclude that section 11–31–1, as construed by 
City of Aurora
, is rationally related to the public interest in health and safety. Without a doubt, the demolition of a structure that is dangerous and unsafe, when it has been demonstrated that the structure is not readily repairable, is rationally related to the legitimate state interest in public health and safety. In addition, the state has a legitimate interest in seeing such structures demolished sooner rather than later. See, 
e.g.
, 
City of Chicago v. General Realty Corp.
, 133 Ill. App. 2d 662, 667 (1971) (the legislative policy underlying section 11–31–1 is “the expeditious protection of the public from the dangers of unsafe buildings”). Moreover, the statute as applied in this case is rationally related to the public interest in health and safety. When there is a threat of release of methane gas, of contamination of the water supply, and the building provides a habitat for mice and other vermin that pose a risk of communicable disease, as the circuit court found, then demolition is reasonable provided that the building is not readily repairable.

Finally, we must determine whether the method chosen by the legislature to protect or further that interest is reasonable. The property owners argue that section 11–31–1, even with the inquiry into the cost of repair mandated by 
City of Aurora
, is arbitrary and unreasonable. They characterize the 15-day notice period as “risibly short” and insist that any consideration of the ratio between the cost of repair and the present value of the building deprives them of the opportunity to choose to spend as much as they are willing to repair it.

The statute provides procedural due process by means of written notice and a trial on the merits before the circuit court. Although the notice period is only 15 days, these property owners have not suggested that they were hampered in any way by the rather short statutory minimum period of notice. Indeed, months passed between the initial notice and the Village’s filing of the petition for demolition.

The statutory framework chosen by the legislature is entirely reasonable and protects the rights of the property owner while permitting the municipality to deal expeditiously with threats to the public health and safety. Section 11–31–1 makes a reasonable distinction between properties that are readily repairable and those that are not. The statute guarantees a property owner the opportunity to make repairs, either before or after an adjudication of “dangerous and unsafe,” if the property is readily repairable. If, however, the property is in need of substantial reconstruction to render it safe, a property owner who is willing to undertake such a project must obtain the necessary permits and undertake repairs promptly upon receiving notice. The owner of such a property who does not promptly undertake repairs, but instead chooses to contest whether the building is dangerous and unsafe and to litigate the question of whether the building is readily repairable, runs the risk that he will lose on the merits and an order of demolition will issue.

The property owners have also challenged section 11–31–1 as violating the takings clause of the United States Constitution and section 15 of the Bill of Rights of the Illinois Constitution. U.S. Const., amend. V; Ill. Const. 1970, art. I, §15. As 
amici
 have ably pointed out, an exercise of police power to prevent a property owner from using his property so as to create a nuisance or a risk of harm to others is not a “taking” in the constitutional sense. See
 Lucas v. South Carolina Coastal Council
, 505 U.S. 1003, 1030, 120 L. Ed. 2d 798, 822, 112 S. Ct. 2886, 2901 (1992). We, therefore, need not consider the takings claim any further.

THE CIRCUIT COURT’S APPLICATION OF SECTION 11–31–1

Having found that section 11–31–1 as construed in 
City of Aurora
 is constitutional, we review the circuit court’s decision to issue a demolition order. Section 11–31–1 requires two findings before an order of demolition may issue. The court must find that the building is dangerous and unsafe. 
City of Aurora
, 38 Ill. 2d at 133. The court must also find that the building is beyond reasonable repair. 
City of Aurora
, 38 Ill. 2d at 137. We review the court’s findings to ensure that they are supported by the evidence and that they are not against the manifest weight of the evidence. 
City of Chicago v. Birnbaum
, 49 Ill. 2d 250, 254 (1971). After a thorough review of the record, we conclude that the circuit court’s finding that the building is beyond reasonable repair was not supported by the evidence.

City of Aurora 
requires that the second finding–that the building is beyond reasonable repair–must be based on a comparison of the cost of repair with the value of the building. 
City of Aurora
, 38 Ill. 2d at 135-36. In 
City of Aurora
, the circuit court refused to admit evidence that the building had a value of $15,000 and that repairs would cost $500. 
City of Aurora
, 38 Ill. 2d at 135. We held that section 11–31–1 contemplates repair when it is feasible. 
City of Aurora
, 38 Ill. 2d at 136. Therefore evidence comparing repair cost to value should have been admitted. 
City of Aurora
, 38 Ill. 2d at 137. There should have been “proof of the extent or proportion of its value to which the building had deteriorated.” 
City of Aurora
, 38 Ill. 2d at 135. The gist of 
City of Aurora 
is that demolition is justified only if repair makes so little economic sense that it is unlikely that an owner would make use of any further opportunity to repair. Because knowledge of the current value of the building is necessary to determine whether repair makes economic sense, 
City of Aurora 
requires that a court find current value before it may issue a demolition order.

In this case, the circuit court found that the cost of repair would be $75,000. The court further found that the value of the building was $100,000. The court’s sole evidence of the value of the building was testimony that the property (including, presumably, the land) was sold some 20 years prior to the hearing by Mrs. Dorothy Stokovich to her son Nick Stokovich.

We have said that, “It goes without saying that a 
contemporaneous
 sale between parties dealing at 
arms length 
is not only relevant to the question of fair cash market value, [citations] but would be practically conclusive ***.” 
(Emphases added.)
 People ex rel. Korzen v. Belt Ry. Co. of Chicago
, 37 Ill. 2d 158, 161 (1967). The converse should also go without saying: if a sale is remote in time, or is not an arm’s length transaction, it is little evidence of market value. We have never had occasion to rule on whether a sale that occurred as long as 20 years prior to the valuation date would be admissible to prove the value of real estate. 
Cf
. 
Forest Preserve District of Cook County v. Krol
, 12 Ill. 2d 139, 146-47 (1957) (finding a sale nearly three years prior to valuation date not too remote to be admissible in a condemnation proceeding). There is no doubt, however, that even if the evidence of the 20-year-old sale was admissible it could not, by itself, support the court’s finding of value. When defendants’ counsel objected to the court’s use of a 20-year-old sale, the court made a remark implying that any increase in market value over that time had been negated by the fact that the property was not well kept. However, we find nothing in the record to show that depreciation due to poor maintenance must have negated any appreciation over time.

Not only was the sale of the property from Mrs. Stokovich to her son too remote in time to support the court’s valuation, Mrs. Stokovich’s uncontradicted testimony also indicates that the sale was not an arm’s length transaction. She testified that there was no agreement in writing, that her son had not yet paid $75,000 of the agreed price of $100,000, and that she simply trusted him to pay the balance when he could. Because the sale from mother to son was both remote in time and not an arm’s length transaction, we conclude that the court’s evidence of the value of the property was insufficient as a matter of law. Because 
City of Aurora 
requires that a finding that a building is beyond reasonable repair must be based on a comparison of value with cost of repair, the court’s finding that the building was beyond reasonable repair was not supported by the evidence. The court thus lacked the basis that section 11–31–1 requires for an order of demolition to issue. We vacate the order of demolition and remand for further proceedings.

In the interest of judicial economy we address the following issues to aid the court on remand. First, we review the court’s finding that the building was dangerous and unsafe. There was testimony by Jennifer Schaefer, a sanitarian, that in 1998 there were mouse feces throughout the building, as well as feces of some larger mammal, not a dog, at two places in the building. Schaefer also testified that in May of 2000, shortly before the hearing, she saw gaps in the building through which vermin could enter. She stated that the amount of feces suggested “numerous” mice, that mice are known to carry disease, and that mice would go out into the surrounding area in search of food if none were available in the building. Schaefer was only one of several witnesses who described ways in which the building may threaten public health and safety. Based on the testimony, the finder of fact could conclude that the building is a threat to public health. We find that the evidence was sufficient to support the finding that the building is dangerous and unsafe.

Furthermore, the defendants have not met the burden of showing that a finding supported by evidence was nevertheless against the manifest weight of the evidence. The record indicates that the building was still vacant at the time of the hearing, and the record evidence did not establish that this vacant building was being kept reasonably free of vermin and in a generally safe condition. We conclude that the court’s finding that the building was dangerous and unsafe was not against the manifest weight of the evidence. Therefore, the circuit court on remand, if the issue arises, should only consider evidence that the building’s condition has changed since the first hearing. In the absence of such evidence, the court may rely on its prior finding that the building is dangerous and unsafe.

Second, we note that the court refused to admit defendants’ proffered evidence of the current value of the property by a licensed real estate agent who had recently sold property in Lake Villa and about recent offers to purchase the property. A witness who is familiar with the property at issue and has direct knowledge of real estate values in the vicinity is competent to offer an opinion about value. 
Forest Preserve District of Cook County v. Krol
, 12 Ill. 2d 139, 147 (1957). Furthermore, 
bona fide 
offers to purchase property for cash, in the absence of evidence of comparable sales, are some evidence of fair cash market value. 
City of Chicago v. Anthony
, 136 Ill. 2d 169, 188 (1990), citing 
Department of Public Works & Buildings v. Lambert
, 411 Ill. 183, 191 (1952).

Finally, we point out that as the plaintiff the Village bears the burden of coming forward with sufficient evidence to support each of the findings necessary for an order of demolition.

CONCLUSION

Having held that section 11–31–1, as construed in 
City of Aurora
, is constitutional, we further hold that the circuit court’s decision to issue an order of demolition was not supported by the evidence. We therefore vacate the order of the circuit court and remand the cause to that court for further proceedings.

In the interest of judicial economy, we have reviewed the circuit court’s finding that the building is dangerous and unsafe. We have reviewed the evidence of record, including evidence that the building was vacant, that it was infested by mice, and the lack of evidence that it was being kept reasonably free of mice and other vermin at the time of the hearing. The record also includes evidence of the possible buildup of methane gas, possible contamination of the Village water supply, and photographs that depict the generally dilapidated condition of the building. Based on all the evidence, we have affirmed the finding of dangerous and unsafe. We therefore instruct the circuit court that it should only consider evidence that the condition of the building has changed since the first hearing. In the absence of such evidence, the court may rely on its previous finding that the building is dangerous and unsafe.

Because of our disposition, we need not address the Village’s argument that the appellate court’s ruling was inconsistent or overly broad. Nor do we address the Village’s argument that the building cannot be repaired because it cannot be brought into compliance with current zoning regulations. Questions regarding the effect of zoning on this dispute were mentioned but never squarely raised and litigated in the circuit court. Therefore the Village’s zoning argument is not properly before us.

The judgment of the appellate court is reversed, the judgment of the circuit court is vacated, and the cause is remanded to the circuit court for further proceedings.

Appellate court judgment reversed;

circuit court order vacated;

cause remanded.

JUSTICE FREEMAN, concurring in part and dissenting in part:

I agree with the majority that the failure of the property owners to timely comply with Supreme Court Rule 19 (134 Ill. 2d R. 19) does not deprive the court of jurisdiction to consider the constitutional challenge to section 11–31–1 of the Illinois Municipal Code (65 ILCS 5/11–31–1(a) (West 1996)). I also agree with the majority that the property owners have standing to challenge the constitutionality of section 11–31–1, but their challenge fails because the statute is rationally related to the public interest in health and safety. Lastly, I agree with the majority that the cause must be remanded because the circuit court lacked the evidentiary basis for entry of an order of demolition pursuant to section 11–31–1. I part company with the majority, however, because the majority gives its imprimatur to other findings of the circuit court which likewise lack evidentiary support in the record. The majority’s error is all the more lamentable because resolution of these issues is not needed in light of the remand ordered by the court.

The findings in question are that the building is dangerous and unsafe, and the cost of repair is $75,000. The majority states:

“There was testimony by Jennifer Schaefer, a sanitarian, that in 1998 there were mouse feces throughout the building, as well as feces of some larger mammal, not a dog, at two places in the building. Schaefer also testified that in May of 2000, shortly before the hearing, she saw gaps in the building through which vermin could enter. She stated that the amount of feces suggested ‘numerous’ mice, that mice are known to carry disease, and that mice would go out into the surrounding area in search of food if none were available in the building. Schaefer was only one of several witnesses who described ways in which the building may threaten public health and safety. Based on the testimony, the finder of fact could conclude that the building is a threat to public health. We find that the evidence was sufficient to support the finding that the building is dangerous and unsafe.” Slip op. at 19.

The majority’s summary of Schaefer’s testimony omits her further testimony that she did not see any evidence of animal harborage in the building. Although the presence of mice droppings, endemic to public and residential buildings in the Chicago metropolitan area and cities throughout our state, is far from commendable, Schaefer’s testimony supports an inference of past, not present, rodent infestation. The majority’s summary of other dangers posed by the building is understandably vague since these dangers represent only potential threats to public health and safety.

Not satisfied with vague references to danger in the analysis section of the opinion, the majority advances more specific references in the conclusion section of the opinion. The majority states: “The record also includes evidence of the possible buildup of methane gas, possible contamination of the Village water supply, and photographs that depict the generally dilapidated condition of the building.” Slip op. at 20. Although more specific, these threats remain in the realm of potential dangers. As shown by the appellate court opinion upon which the majority purports to rely, the Village’s plumbing inspector testified that he performed no tests to determine if methane gas was present in the building. 334 Ill. App. 3d at 494. He further testified that he did not determine whether the building’s plumbing system was tied into the Village’s drinking water system. Indeed, earlier testimony established that the building had not been provided water by the Village since 1989. Without information that the building’s plumbing system tied into the Village’s drinking water system, the circuit court could hardly determine that the building posed a danger of contamination to the Village’s drinking water system. Moreover, if the building’s plumbing system tied into the Village’s system, the opposite conclusion would hold since there was no testimony of present contamination of the Village’s water supply.

The majority also endorses the circuit court’s finding that the cost of repair is $75,000. As the majority acknowledges, however, “
City of Aurora
 [
v. Meyer
, 38 Ill. 2d 131 (1967),] requires that a finding that a building is beyond reasonable repair must be based on a comparison of value with cost of repair.” Slip op. at 18-19. As further explained in 
City of Aurora
, 38 Ill. 2d at 137, the circuit “court should find from the evidence what the specific defects are which render the building dangerous and unsafe. If they are such as may readily be remedied by repair, demolition should not be ordered without giving the owners a reasonable opportunity to make the repairs.” Thus, the cost of repair is the cost necessary to correct the conditions that render the structure dangerous and unsafe.

At trial, a contractor with 10 years of experience in “rehab” and remodeling testified that the building was safe to be in, as it was “very sound.” He further testified that the property could be completely renovated into a single-family residence for a cost of between $64,000 and $75,000. In finding that the cost of repair is $75,000, the circuit court used the cost of complete renovation of the building, rather than the cost of repair of the specific defects which render the building dangerous and unsafe. The circuit court committed clear error. In light of the majority’s citation to 
City of Aurora
 as controlling authority, the majority’s endorsement of the circuit court’s finding is likewise erroneous.

CONCLUSION

As the majority acknowledges, this cause must be remanded to the circuit court for further proceedings. The circuit court must obtain evidence regarding the value of the building and compare the building’s value to the cost of repair of the defects that render the building dangerous and unsafe. Additionally, the majority instructs the circuit court that it may consider evidence that the condition of the building has changed since the first hearing. Slip op. at 19. Given the need for remand, the majority’s review and endorsement of the circuit court’s findings is particularly unwise. The circuit court’s findings were purely speculative. There was simply no evidence on the cost of repair to correct the specific defects which render the building unsafe. There was simply no evidence of danger to the Village’s drinking water system. There was simply no evidence regarding the buildup of methane gas in the building. This lack of evidence calls for reversal, not approval, of the circuit court’s findings.

As this court has heretofore recognized, “[t]he law is well settled that in cases of this nature courts do not go further than is necessary to protect the public interest.” 
City of Aurora
, 38 Ill. 2d at 136. Such restraint applies not only to the circuit court at hearing on the need for demolition, but to this court on review of the propriety of the circuit court’s order. Because the majority insists on endorsing the circuit court’s speculative findings, I cannot join fully in the majority opinion.

CHIEF JUSTICE McMORROW and JUSTICE KILBRIDE join in this partial concurrence and partial dissent.