# Illinois Official Reports

## Appellate Court

*County of McHenry v. Smith*, 2015 IL App (2d) 141165

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF McHENRY, Plaintiff-Appellant, v. JACK LEO SMITH; JAMES SMITH; ROBERT G. SMITH; WILLIAM W. LeFEW; GENERAL ELECTRIC CAPITAL CORPORATION; UNKNOWN OWNERS OF THE PROPERTY COMMONLY KNOWN AS 2811 MYANG AVENUE, McHENRY, ILLINOIS; and UNKNOWN HEIRS OR LEGATEES OF ALEXANDER J. SMITH OR MARY ANN SMITH, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-14-1165 |
| Filed | September 1, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-MR-68; the Hon. Michael T. Caldwell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Louis A. Bianchi, State's Attorney, of Woodstock (David C. Mellem, Assistant State's Attorney, of counsel), for appellant.<br><br>No brief filed for appellees. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Hudson concurred in the judgment and opinion. |

¶ 1    Plaintiff, the County of McHenry, filed a verified petition under section 5-1121 of the Counties Code (55 ILCS 5/5-1121 (West 2012)) seeking to demolish a building at 2811 Myang Avenue. The trial court denied the petition. The court found that plaintiff did not notify all of the property's owners and that plaintiff failed to prove that it would not be economically feasible to repair the property. On appeal, plaintiff contests both findings. We affirm.

¶ 2    The petition alleged that the property is abandoned and in severe disrepair, representing a safety hazard to the surrounding community. The property's record titleholders are Alexander J. Smith and Mary Ann Smith. Alexander Smith died in 1980, and Mary Ann Smith died in 2008. The property had not gone through probate as of the date of filing, and it had been abandoned since at least 2010. The petition further alleged that all known potentially interested parties had been notified, including James Smith, Robert G. Smith, Jack Leo Smith, and General Electric Capital Corporation.

¶ 3    At the hearing, McHenry County code-enforcement inspector Deborah Sorensen testified that she had visited the property at least 15 times and had viewed it 50 to 60 times in the course of other inspections in the neighborhood. She first visited the property in March 2001 in response to complaints about possible hoarding at the property. She saw that the house was full of personal items stacked fairly high. She observed ceiling tiles with stains on them. Electrical wiring was hanging from the exterior, and parts of the roof were starting to sag.

¶ 4    Sorensen identified photographs of the property. They depicted "significant water damage," areas where parts of the walls were missing, and areas of wood rot. Sorensen returned to the property in October 2011, in response to neighbors' complaints. She took photos showing the sagging roof and broken windows, among other things. On subsequent visits, she observed the property continuing to deteriorate.

¶ 5    Sorensen visited the property again before coming to court. She observed that virtually every window in the house was broken out. The roof had several holes in it, and parts of the soffit were starting to rot out. She detected a strong "mildew type" odor as she approached the house. She would want to have it tested for mold. The house's condition could "very well" create a public health issue.

¶ 6    In 2011, the property was cited for being unsafe due to lack of maintenance. Sorensen estimated that it would cost between $40,000 and $50,000 to bring the house up to code.

¶ 7    Jack Leo Smith testified that he was then in prison and expected to be released in 2022. He acknowledged that the property looked unsightly after having been in "storms and fires," but he argued that there was no evidence that it was too severely damaged to be repaired. He said that he had put up the north side of the roof himself and that other parts of the property could be repaired as well. He had been in contact with someone who could potentially do the repairs, and he expected the repairs to be completed by July 4, 2015.

¶ 8    Smith said that he had a brother living in Arizona or New Mexico who was not notified about the proceeding. The children of a deceased sister also were not notified.

¶ 9    The trial court, while acknowledging that the property was an "eyesore" and "probably unsafe," nevertheless denied permission to demolish it. First, the court did not believe that it

had "all of the parties necessary to this suit before the Court." The court noted that the assessed valuation of the property in 2014 was approximately $82,000, which exceeded Sorensen's estimate of the cost of repairs. The court further observed that there was no evidence of what the property's value would be if it were rehabilitated or what that value would be in terms of the total cost of rehabilitation. Finally, the court noted that, while Sorensen was undoubtedly an expert in "what is or is not in compliance with the ordinance," there was no evidence that she was qualified to give an opinion on the cost of making the necessary repairs.

¶ 10    The trial court denied plaintiff's motion to reconsider. Plaintiff timely appeals.

¶ 11    We note that no defendant has filed a brief in this court. However, as the issues are relatively simple, we may resolve them without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 12    Plaintiff first contends that the trial court erred by finding that plaintiff failed to give notice to all interested parties. Section 5-1121 allows a county to begin proceedings to demolish a building if "the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail to do so, have failed to commence proceedings to put the building in a safe condition or to demolish it." 55 ILCS 5/5-1121(a) (West 2012). That section further provides, "Where, upon diligent search, the identity or whereabouts of the owner or owners of the building, including the lien holders of record, is not ascertainable, notice mailed to the person or persons in whose name the real estate was last assessed and the posting of such notice upon the premises sought to be demolished or repaired is sufficient notice under this Section." *Id.*

¶ 13    The parties have not cited, and our research has not uncovered, any case interpreting the notice provision of section 5-1121(a). In construing a statute, our primary goal is to ascertain and give effect to the legislature's intent, which is best indicated by the plain and ordinary meaning of the statute's language. *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 12. The above-quoted portions of the statute together require the county to provide mailed notice to all owners of the building. Further, the county must conduct a diligent search for such owners before resorting to alternative notice methods.

¶ 14    Here, the record titleholders were both deceased and, according to plaintiff, neither left a will. Thus, the property presumably passed by intestacy to their children. Plaintiff in fact gave notice to three of these children. It thus argues that it notified "the only known or believed to be known heirs" of Alexander and Mary Ann Smith and provided notice by publication to all unknown owners and lien holders.

¶ 15    Jack Leo Smith, however, testified that he had a brother who was not notified and that the children of a deceased sister also did not receive notice. These relatives presumably have ownership interests in the property. Plaintiff's only response on this point is to note that, at one point in the proceedings, Smith, when asked if he had any siblings, replied, "I don't." It is clear from the context, however, that Smith either simply misspoke or perhaps did not know what "siblings" meant. He later testified in detail about his brother and sister and contended that they or their children did not receive notice as required by the statute.

¶ 16    The trial court could credit Smith's testimony that he had additional relatives who were not notified. See *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001) (it is the trier of fact's province to resolve conflicts in the evidence). The statute requires a "diligent search" for the property owners before a county may dispense with mailed notice and resort to alternative notice methods. 55 ILCS 5/5-1121(a) (West 2012). Plaintiff says nothing about what steps it took to

ascertain the property's owners, so we cannot conclude that it was diligent in attempting to locate them. Plaintiff's argument amounts to an assertion that it notified all the owners that it knew about, but it says nothing about what steps it took to attempt to locate additional owners. In any event, plaintiff did not comply with the alternative-notice provision of section 5-1121, which requires that notice be posted at the property, but instead provided notice by publication. We thus affirm the trial court's order.

¶ 17   Because we conclude that plaintiff did not provide proper notice, we need not consider its additional argument that the trial court's order denying leave to demolish the building is against the manifest weight of the evidence. However, we note that, to order the demolition of a building pursuant to the analogous section 11-31-1 of the Illinois Municipal Code (65 ILCS 5/11-31-1(a) (West 2012)), a court must find that the building is dangerous and unsafe and that it is beyond reasonable repair. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 131 (2004). We review the court's findings to ensure that they are not against the manifest weight of the evidence. *Id.* "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 18   Initially, the trial court properly discounted Sorensen's opinion about the cost of repairing the building. Although, as the trial court found, Sorensen was qualified by virtue of her position to opine that certain conditions did not comply with the building code, plaintiff points to no evidence that she was familiar with the cost of completing such repairs. She did not testify, for example, that it was a regular part of her job to obtain estimates for such repairs. We further note that many of Sorensen's opinions were based on assumptions about conditions within the structure.

¶ 19   In any event, the trial court's ultimate conclusion that plaintiff failed to prove that repairing the building would not be cost-effective is not against the manifest weight of the evidence. The trial court ruled that, even accepting Sorensen's estimate at face value, there was no evidence of what the value of the property would be after it was repaired. Plaintiff's argument focuses solely on the estimated cost of repairs relative to the then-current value of the building. However, the court correctly noted that, if the repairs increased the value of the property sufficiently, rehabilitation would be feasible, and plaintiff presented no evidence of what the property's value would be if it were rehabilitated.

¶ 20   The judgment of the circuit court of McHenry County is affirmed.

¶ 21   Affirmed.