[No. B066509. Second Dist., Div. Seven. Oct. 4, 1993.]

HAWTHORNE SAVINGS AND LOAN ASSOCIATION, Plaintiff and Appellant, v.
CITY OF SIGNAL HILL, Defendant and Respondent.

152

COUNSEL

Stephen D. Sawyer, McKenna & Fitting, Aaron M. Peck, Rogers & Wells and Andrew J. Yamamoto for Plaintiff and Appellant.

Rutan & Tucker, David J. Aleshire, David B. Cosgrove and Carrie E. Phelan for Defendant and Respondent.

OPINION

**JOHNSON, J.**—This is an appeal by Hawthorne Savings and Loan Association (Hawthorne) from a judgment denying a peremptory writ of mandate

under section 1094.5 of the Code of Civil Procedure and thereby affirming the City of Signal Hill's order requiring demolition of substandard residential buildings belonging to Hawthorne. We issued an order staying demolition of the buildings pending disposition of this appeal. We now reverse the judgment denying the writ and remand the matter to the superior court for further proceedings.

## FACTS AND PROCEEDINGS BELOW

Hawthorne is the owner of improved property in the City of Signal Hill (City) known as the Angeline Court apartments. Hawthorne acquired this property through foreclosure on a deed of trust executed by the former owner, Welter. Through a series of stays obtained in the bankruptcy court, Welter managed to stave off foreclosure proceeding for nearly two years. In the meantime, Welter allowed Angeline Court to fall into such a state of dilapidation the City ordered the tenants to vacate in May 1990. The buildings are now boarded up and the property fenced and patrolled by security guards at Hawthorne's expense.

Between 1988 and 1991 the City attempted without success to get the former owners to repair the buildings. The City acknowledges during that time Hawthorne had no control over the property and was not responsible for the dilapidated conditions. Hawthorne acquired title to the property in early November 1991.

A few weeks after Hawthorne acquired title to Angeline Court the City served Hawthorne with a notice and order to demolish the buildings within 120 days. Accompanying the order was a list of approximately 170 code violations existing in the buildings. Hawthorne filed an appeal to the city council sitting as the City's board of appeal. In the notice of appeal, Hawthorne contended it had not had sufficient time to evaluate whether to attempt to repair the code violations and pointed out it was not in possession of the property when the building became dilapidated. Hawthorne also noted it had installed a fence around the property and hired security guards to meet the City's concern the property was a harbor for vagrants and criminals.

In January 1992 a hearing was held on Hawthorne's appeal from the demolition order. Hawthorne presented testimony from a licensed contractor who had inspected the property and estimated it could be restored to the way it was for approximately $300,000. The contractor stated he had come up with his figures the week before and despite efforts to meet with the City's building department no meeting had taken place prior to the hearing on the appeal. Nevertheless, Hawthorne represented to the city council it was

prepared to go ahead with repairs to the building. Members of the public were allowed to speak. All of them opposed repair and favored demolition of the buildings. The city council then voted unanimously to deny the appeal and directed city staff to proceed with the demolition.

In denying the appeal, the city council made findings of fact the buildings presently contained the housing code violations stated in the demolition order; the property is unsafe for dwelling purposes; the buildings are so dilapidated and deteriorated as to be "unsuitable candidates for repair"; no plan for repair was submitted by Hawthorne and Hawthorne's oral presentation at the hearing "failed to convince the board of appeals that repairs would be made or that proposed repairs would address the extensive building code defects found to exist on the property." The council further found the property to be a fire hazard and a harbor for vermin and insect infestation.

Based on those findings, among others, the city council denied Hawthorne's appeal and ordered demolition in accordance with the notice and order previously served on Hawthorne. Hawthorne filed a petition for writ of mandate challenging the denial of its appeal as an abuse of discretion. (Code Civ. Proc., § 1094.5.) The petition and argument in the superior court focused primarily on the alleged deprivation of procedural due process at the board of appeal hearing, e.g., failure to swear witnesses, failure to afford cross-examination and lack of opportunity to present rebuttal evidence.

The trial court denied the petition on three alternative grounds: First, Hawthorne's appeal was untimely and not in the proper form. Second, Hawthorne failed during the hearing to raise any of the procedural objections it was now asserting; therefore the objections were waived. Third, substantial evidence supports the City's decision to demolish the buildings. In support of the latter ground the court stated Hawthorne had failed to present any plans for rehabilitation or any timetable for when that rehabilitation might be accomplished.

The trial court issued an order staying demolition of the buildings for 10 days to allow Hawthorne to perfect an appeal and petition for a further stay in the appellate court. The stay was conditioned on Hawthorne providing a 24-hour security guard on the premises. We granted a further stay of demolition, on the same condition, pending disposition of Hawthorne's appeal.[1]

---

[1]The City argues this appeal should be dismissed because Hawthorne failed to file "a full record" in the trial court. Code of Civil Procedure, section 1094.5, subdivision (a) does not

## Discussion

### I. *By Accepting Hawthorne's Appeal and Conducting a Hearing the City Waived Its Claim the Appeal Was Untimely and Not in the Proper Form.*

 The City contends Hawthorne failed to file a timely appeal in proper form and, therefore, has no basis for complaining about the procedures followed by the city council or the council's decision to go ahead with the demolition. We find the record does not support the City's contention.

The City has adopted the Uniform Code for the Abatement of Dangerous Buildings.[2] Section 501 of the Uniform Code provides an appeal shall be filed within 30 days from the date of service of a notice of demolition and shall contain certain information including a verified statement of the relief sought and the reasons why the protested order should be reversed. Section 502 of the Uniform Code provides "[f]ailure . . . to file an appeal in accordance with the provisions of Section 501 shall constitute a waiver of [the] right to an administrative hearing and adjudication of the notice and order or any portion thereof."

The record shows an order of demolition was contained in a letter to Hawthorne dated November 18, 1991. In a letter dated December 20, 1991, from Hawthorne to the City, Hawthorne states it is "reiterat[ing]" its "formal appeal of your notice and order dated November 18, 1991." This letter goes on to state five grounds why the demolition order should be reversed. The letter is not verified.

A transcript of the city council meeting of January 21, 1992, shows the council took up the matter of demolishing the subject property. The transcript refers in several places to Hawthorne's "appeal" of the demolition

---

require the petitioner to produce the "full" record. In fact it provides "All or *part* of the record of the proceedings before the [board] may be filed with the petition, may be filed with the respondent's points and authorities, or may be ordered to be filed by the court." (Italics added.) Obviously, if the petitioner does not file a sufficient administrative record he runs the risk of having the petition denied. (*Hothem* v. *City and County of San Francisco* (1986) 186 Cal.App.3d 702 [231 Cal.Rptr. 70].) But failure to file a "full" record certainly does not require dismissal of the appeal, as argued in the City's brief. Furthermore, the record shows the City did not make a timely objection in the trial court to the adequacy of the record. Indeed, counsel for the City conceded "It's too late to object . . . to that at this point."

[2]We take judicial notice of chapter 15.32 of the Signal Hill Municipal Code and the Uniform Code for the Abatement of Dangerous Buildings (hereafter Uniform Code). (Evid. Code, § 452, subds. (b), (c).)

. notice and contains a recommendation by the city planning director to "deny the appeal." The transcript also contains the following explanation by the city planning director to the council: "Hawthorne Savings has appealed the notice and order [of demolition]. The city council pursuant to the administrative code shall serve as the appeals board in this hearing and the responsibility of the board will be to decide on the appeal but not to interpret the code or the requirements of uniform code."

At the conclusion of the hearing, a motion was made to "deny the appeal." The motion passed unanimously and the planning staff was directed to prepare a proper resolution for the council. This resolution, adopted by the city council, provides in relevant part that it is a resolution "of the City Council of the City of Signal Hill, California, acting as the board of appeals denying the appeal of the notice and order dated November 18, 1991, submitted by Hawthorne Savings and Loan Association . . . ." The resolution refers in several other places to the "appeal" of the demolition order by Hawthorne and the "hearing" conducted by the city council sitting as the board of appeal. It further appears from the resolution the city council, sitting as the board of appeals, took evidence and made findings of fact and reached a decision "to deny the appeal presented by Hawthorne Savings and Loan . . . ."

The foregoing evidence compels the conclusion the City waived any defects in the timing and form of Hawthorne's appeal from the demolition order. (Cf. *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212, 222-223 [239 Cal.Rptr. 470].) Hawthorne's statement in its December 20 letter that its purpose was to "reiterate Hawthorne's formal appeal" of the City's November 18 order suggests an appeal was filed within the 30-day period even though it is not in the record before the court. Furthermore, the evidence refutes the City's claim it allowed Hawthorne to present its arguments against demolition as a mere courtesy. To the contrary, the city council sat as a board of appeal, heard evidence, made findings of fact, and reached a decision "to deny the appeal." References to Hawthorne's "appeal" appear throughout the record of the hearing and the resolution subsequently adopted. ██ █ █ Having treated Hawthorne's protest of the demolition as an appeal in all respects, the City cannot seek to cut off review of its decision on a ground never raised during the administrative proceedings. (*J.L. Thomas, Inc.* v. *County of Los Angeles* (1991) 232 Cal.App.3d 916, 922-923, 926-927 [283 Cal.Rptr. 815].)[3]

---

[3]We agree with the City, however, that Hawthorne waived its objections to the procedures followed at the hearing by failing to object to the manner in which the hearing was conducted. (*Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 139 [40 Cal.Rptr. 171]; *Tennant* v. *Civil Service Com.* (1946) 77 Cal.App.2d 489, 498 [175 P.2d 568].)

II. *The City Failed to Proceed in the Manner Required by Law When It Ordered the Buildings Demolished Without Affording Hawthurne the Choice to Make Repairs.*

 It is well settled the court, in an administrative mandamus proceeding, may review the validity of an agency regulation or the agency's interpretation of constitutional or statutory provisions. (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 678 [170 Cal.Rptr. 484, 620 P.2d 1032]; *Grier* v. *Kizer* (1990) 219 Cal.App.3d 422, 440 [268 Cal.Rptr. 244].) Proceeding pursuant to an invalid regulation or an incorrect legal interpretation is "not proceed[ing] in the manner required by law." (Code Civ. Proc., § 1094.5, subd. (b); *Woods* v. *Superior Court*, *supra*, 28 Cal.3d at p. 678.)

 In the present case, Hawthorne contends the City failed to proceed in the manner required by law because it issued the notice and order of demolition within a few weeks after Hawthorne acquired the property and without first affording Hawthorne the opportunity to repair the buildings. Hawthorne's claim raises important issues of public policy involving the correlative rights and duties of municipalities and property owners in alleviating the health and safety hazards posed by residential buildings which are in a substandard or dangerous condition. Many cities in California face the same problem of eradicating urban blight as faced by the City of Signal Hill in this case. Efforts to rehabilitate slum conditions while maintaining an adequate supply of low- and moderate-income housing will often pit the municipality's police power against the property owner's right to be free from an unconstitutional taking of its property. If the City of Signal Hill erred in the manner it proceeded here, other cities are likely to do the same absent guidance from the courts as to the proper procedures to be followed.

Before reaching the merits, however, we must address another waiver claim. The City asserts Hawthorne failed to raise the repair-or-demolish issue below and, therefore, is precluded from raising it in this appeal. (Cf. *Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 [181 Cal.Rptr. 732, 642 P.2d 792] [allowing petitioner to raise bias of hearing officer for first time on appeal would "undermine orderly procedure on administrative mandamus."].)

While it is true Hawthorne did not claim at the hearing it had a "legal right" to choose to repair the buildings, it did contend in its notice of appeal it had had insufficient time to evaluate whether the code violations could be

corrected and whether doing so would be cost effective. At the hearing, Hawthorne advised the city council it had determined repair would be economically feasible and that it wished to remedy the defects in the buildings as opposed to demolishing them. Furthermore, a legal argument about its right to choose repair over demolition would have been futile because the city council took the position at the beginning of the hearing it would not review the requirements of the law as interpreted by its planning director, the person who issued the demolition order to Hawthorne. (Cf. *Grier* v. *Kizer, supra*, 219 Cal.App.3d at pp. 430-431 [challenge to validity of agency practice at administrative hearing futile in light of agency's position it would not reconsider its interpretation of statute].)

 The issue of Hawthorne's right to choose to repair was raised, albeit indirectly, in its petition for writ of mandate which alleged, "Petitioner . . . has engaged a California licensed general contractor who has inspected the Property and reviewed the building violations set forth in the Notice and Order. [¶] Petitioner . . . alleges that the violations set forth in the Notice and Order can be corrected and/or repaired at a cost of, approximately, $300,000.00. Petitioner . . . is ready, willing and able to spend the amounts necessary to repair and/or rehabilitate the Property so as to afford low and moderate income housing."

We have no doubt at the time the City issued the demolition order Angeline Court was in a substandard and dangerous condition as defined by the State Housing Law (Health & Saf. Code, § 17910 et seq.) and the Uniform Code. There is ample evidence in the record to support the City's finding in this respect. This finding would authorize the city to forbid occupancy of Angeline Court while it remains in this condition. (Health & Saf. Code, § 17980, subd. (b).) That, however, is not the question presented here. The City forced the tenants to vacate in May 1990.

We also have no doubt that prior to ordering demolition, the City had a constitutional and statutory duty to first afford Hawthorne the choice of repairing or demolishing the buildings, a reasonable time in which to make that choice and, if Hawthorne chose to repair, a reasonable opportunity to do so.

 Courts in California and numerous other jurisdictions have recognized requiring an owner to demolish a building without compensation is a "taking" subject to the constraints of due process. (*Armistead* v. *City of Los Angeles* (1957) 152 Cal.App.2d 319, 324 [313 P.2d 127]; *Miles* v. *District of Columbia* (D.C. Cir. 1975) 510 F.2d 188, 192 [166 App.D.C. 235]; *Pic* v.

*City of Grafton* (N.D. 1983) 339 N.W.2d 763, 765; *Johnson v. City of Paducah* (Ky.Ct.App. 1974) 512 S.W.2d 514, 516; *Horton v. Gulledge* (1970) 277 N.C. 353 [177 S.E.2d 885, 890, 43 A.L.R.3d 905] overruled on other grounds, *State v. Jones* (1982) 305 N.C. 520 [290 S.E.2d 675, 681].) Among these constraints is "that in fairness and in justice there is no other way reasonably to correct the nuisance." (*Armistead v. City of Los Angeles, supra*, 152 Cal.App.2d at p. 324; and see *Stoetzner v. City of Los Angeles* (1959) 170 Cal.App.2d 394, 396 [338 P.2d 971] [building may be ordered demolished "if the nuisance which it creates cannot be otherwise abated."].) As the court explained in *Miles v. District of Columbia, supra*: "A municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health. However, that municipality must, before destroying a building, give the owner sufficient notice, a hearing and ample opportunity to demolish the building himself or to do what suffices to make it safe or healthy; such a procedure is the essence of the governmental responsibility to accord due process of law." (510 F.2d at p. 192.)

Closest to the present case on its facts is *Horton v. Gulledge, supra*. In *Horton*, the property owner was ordered to demolish a building under a city ordinance requiring the demolition of any substandard building the repair of which would exceed 60 percent or more of its value. As described by the court, ". . . the order served upon [plaintiff] and the ordinance upon which it rests do not offer him [an] alternative to demolition of the building. He was served with the blunt direction, Destroy the house within the time specified or the city will do so and charge you for the expense of its demolition." (177 S.E.2d at p. 890.) Similarly, in the present case the City's only notice to Hawthorne stated, "The Building Official has determined the buildings are to be demolished. . . . [D]emolition must be completed within 120 days of the date of this notice. [¶] Failure to obtain required permits for repair or demolition of the subject building within sixty (60) days will result in the City initiating procedures to demolish the building and charge the costs against the property or owner."

The *Horton* court held ordering demolition of the property without giving the owner a reasonable opportunity to bring the building into conformity with the housing code was a denial of due process. In vacating the demolition order, the court stated, "The order of demolition in this case, if carried out, would clearly deprive the plaintiff both of property presently owned by him and of the liberty to invest in its improvement." (177 S.E.2d at p. 891.)

California has codified the property owner's constitutional right to choose repair or demolition. Health and Safety Code section 17980, subdivision (b)

provides in relevant part: "Whenever the enforcement agency has inspected . . . any building and has determined that the building is a substandard building, the enforcement agency shall commence proceedings to abate the violation by repair, rehabilitation, vacation, or demolition of the building. . . . *The owner shall have the choice of repairing or demolishing.* However, if the owner chooses to repair, the enforcement agency shall require that the building be brought into compliance according to a reasonable and feasible schedule for expeditious repair." (Italics added.) The statute also provides, notwithstanding the owner's choice to repair, the agency may proceed with demolition or other remedies if: "(1) The repair work is not done as scheduled. (2) The owner does not make a timely choice of repair or demolition. (3) The owner selects an option which cannot be completed within a reasonable period of time . . . ."[4]

Thus, California's legislative scheme requires the property owner be given the right to choose repair or demolition but places reasonable conditions on that choice in order to protect the public interest in the abatement of substandard buildings. These conditions include the requirements the owner exercise the choice to repair or demolish in a timely manner and develop a "reasonable and feasible schedule for expeditious repair." In addition, the repair work must be done on schedule. If the owner fails to comply with these conditions, the municipality may itself demolish or repair the buildings. (Health & Saf. Code, § 17980, subd. (b).) Furthermore, the owner's right to choose repair over demolition does not apply in the case of a public health or safety emergency. (*Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711, 718 [97 Cal.Rptr. 840]; *Takata* v. *City of Los Angeles* (1960) 184 Cal.App.2d 154, 165-166 [7 Cal.Rptr. 516] [Owner ordered to demolish apartment building found " '*in such a deteriorated condition that it might collapse at any time, and that if a fire were to commence in this structure it would travel so fast that it would be a miracle if many lives were not lost.*' " (Italics in original.)].)

Here, the City did not afford Hawthorne the opportunity to choose repair over demolition, as required by due process and Health and Safety Code

---

[4]The Uniform Code also recognizes the property owner's right to choose between repairing and demolishing a dangerous building. Section 403 provides in relevant part:

"The following standards shall be followed by the building official (and by the Board of Appeals if an appeal is taken) in ordering the repair, vacation or demolition of any dangerous building or structure:

"1. Any building declared a dangerous building under this code shall be made to comply with one of the following:

"A. The building shall be repaired in accordance with the current building code or other current code applicable to the type of substandard conditions requiring repair; or

"B. The building shall be demolished *at the option of the building owner.* . . ." (Italics added.)

section 17980. Instead, like the defendant in *Horton, supra*, the City simply issued a command the buildings be demolished within 120 days. The City does not contend immediate demolition was required for health or safety reasons. Such an emergency clearly did not exist in the present case. To the contrary, the record shows the buildings were vacant and the City had been pursuing abatement proceedings against the former owners since 1988. Furthermore, the order giving Hawthorne 120 days to demolish the buildings demonstrates there are no exigent circumstances in this case. (Cf. *Miles* v. *District of Columbia, supra*, 510 F.2d at p. 192, fn. 3.)

The City argues its demolition order was proper on three grounds. First, the City contends the ability of a property owner to choose repair over demolition only arises if the owner can cure the code violations without having to repair more than 75 percent of the dwelling and, even then, only if the municipality determines repairs are appropriate. Second, the City asserts it complied with section 17980, subdivision (b) of the Health and Safety Code by affording the previous owners the opportunity to repair or demolish. Third, the City argues Hawthorne was not prejudiced by the City's issuance of a demolition order in the first instance. We find these arguments unpersuasive.

The City's argument the right to repair only applies if 75 percent or less of the dwelling needs repair is based on a misreading of the statute. The language on which the City relies states: "In deciding whether to require vacation of the building or to repair as necessary, the enforcement agency shall give preference to the repair of the building whenever it is economically feasible to do so, without having to repair more than 75 percent of the dwelling . . . ." (Health & Saf. Code, § 17980, subd. (b).) The City reads this provision out of context. This provision only comes into play if the owner has not made a timely choice to repair or has not followed through on the repairs. (See text preceding fn. 3, *ante*.)

Furthermore, the assertion the City has discretion whether to afford the property owner a choice between repair and demolition, is contrary to the requirements of due process and the provisions of Health and Safety Code section 17980 discussed *supra*, pages 158-161. ▮ "While the right exists in the exercise of the police power to destroy property which is a menace to the public health or safety, public necessity is the limit of the right and the property cannot be destroyed if the conditions which make it a menace can be abated in any other recognized way. Destruction of property is a drastic remedy, and it must necessarily be a remedy of last resort." (7A McQuillan, Municipal Corporations (3d ed. 1989) § 24.561, p. 183, fn. omitted.)

■ The City next argues it satisfied the statute by giving notice to repair or demolish to a prior owner of Angeline Court. It contends the statute does not require it to give notice to each succeeding owner. Such a requirement would frustrate the City's code enforcement program because it would subject enforcement to indefinite delay where, as here, the property is continuously transferred from one owner to another.

We believe Health and Safety Code section 17980 can be interpreted in a way so as not to frustrate either the City's code enforcement or the requirements of due process. Section 17980, subdivision (b), requires only that "the owner" be afforded a reasonable time to choose to repair or demolish. We see no reason why, under the statute or the dictates of due process, a new time period has to be extended each time the property changes ownership. Due process does require, however, succeeding owners be put on notice an option to repair or demolish has been offered by the City and on notice as to the time within which that option must be exercised. (See Health & Saf. Code, §§ 17985, 17992.)

In denying Hawthorne's appeal, the city council made no findings a notice to repair or demolish had been sent to any previous owner of the property or that such notice had been recorded pursuant to Health and Safety Code sections 17985 and 17992, or that Hawthorne was aware of such notice. Thus, even giving the due process clause and the statute the interpretation urged by the City, the City's order denying Hawthorne's appeal is not supported by the findings.

■ The third argument, Hawthorne was not prejudiced by the demolition order, is unsupported in law or fact.

Hawthorne was prejudiced in several ways by the City's failure to comply with Health and Safety Code section 17980. Hawthorne was denied a reasonable time in which to choose to repair or demolish the buildings. The demolition order was issued only a few weeks from the time Hawthorne acquired title to the property through foreclosure. Hawthorne was required to file a notice of appeal from the order within 30 days from its service. Hawthorne was also denied the opportunity to develop and present a reasonable, feasible plan for the expeditious repair of the buildings. And, finally, Hawthorne was denied the right to carry out its plan subject to the work being done on schedule and completed in a reasonable time. (Health & Saf. Code, § 17980, subd. (b) (1), (2), (3).)

The City contends Hawthorne was not prejudiced in fact because it was not prevented from preparing a repair plan and, indeed, presented the outline

of such a plan to the city council during the hearing on its appeal from the demolition order. But this argument presupposes the city council had the discretion to decide whether to permit Hawthorne to repair the buildings as opposed to ordering Hawthorne to demolish them. As we have demonstrated above, the City had no such authority. Hawthorne had the *right* to *choose* to repair the buildings subject to the statutory conditions previously discussed. The City turned this constitutional and statutory right into a matter of city council discretion.

In *Horton* v. *Gulledge, supra,* the court rejected the argument the property owner was required to come up with an acceptable repair plan in order to succeed on his appeal of an order of demolition. The court stated: "The record discloses that this petitioner has made no specific proposal to the city for the repair of his house. However, the order served upon him and the ordinance upon which it rests do not offer him that alternative to demolition of the building. . . . Faced with such an order and such an ordinance, the owner is not required to propose an alternative remedy for the undesirable condition of his building before asserting his constitutional right in the courts." (177 S.E.2d at p. 890.)

In the present case, unlike *Horton*, the City contends the buildings cannot be repaired so as to bring them into conformity with the city housing code. The city council made a finding it was not convinced Hawthorne would make the repairs or that the repairs would be adequate. The council also made a finding "the buildings are unsuitable candidates for repair." These findings are irrelevant to the issue before us. As we have already noted, Hawthorne was not required to "convince" the city council it would make the repairs. Under the Health and Safety Code Hawthorne was required to submit a reasonable, feasible plan for expeditiously making the necessary repairs and to carry out the plan in a timely manner. If the appropriate city agency believed Hawthorne's plan was not reasonable, feasible and expeditious or Hawthorne was not meeting its schedule, the agency could then order demolition subject to Hawthorne's right to appeal the agency's determination. The determination whether the buildings "are suitable candidates for repair" is committed by statute to the property owner, not the municipality. The only exception is in the case of exigent circumstances. (*Takata* v. *City of Los Angeles, supra,* 184 Cal.App.2d at pp. 165-166.) This exception is not applicable here.

For the reasons set forth above, we conclude the City failed to proceed in the manner required by law when it ordered Hawthorne to demolish Angeline Court without first affording Hawthorne a reasonable opportunity to

make necessary repairs. The demolition order therefore represented an abuse of discretion and must be vacated.

### DISPOSITION

The judgment denying a peremptory writ of mandate is reversed, and the matter is remanded to the trial court to enter a new and different judgment granting the writ and directing the City of Signal Hill to vacate its demolition order and to conduct such further proceedings on this matter as it may deem advisable in the manner required by law and consistent with the views expressed in this opinion.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied October 28, 1993, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 30, 1993.