Filed 8/13/15  Toprakjian v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| LUCY TOPRAKJIAN, | |
| Plaintiff and Appellant, | E059952 |
| v. | (Super.Ct.No. RIC10012194) |
| COUNTY OF RIVERSIDE, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard and Gordon R. Burkhart, Judges.*  Affirmed.

Law Offices of Murphy & Eftekhari, Thomas Murphy and Afshin Eftekhari for Plaintiff and Appellant.

Disenhouse & Ivicevic, Bruce E. Disenhouse and Janine L. Highiet-Ivicevic for Defendant and Respondent.

---

*  Judge Burkhart is a retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

Plaintiff and appellant, Lucy Toprakjian (plaintiff), sued defendant and respondent, County of Riverside (the County), alleging causes of action for negligence and trespass, and seeking damages based on the County's demolition of a building and other "substandard" structures on plaintiff's closed commercial property, formerly used as a gasoline station and convenience store.  The County demolished the structures in November 2008, pursuant to a July 2006 nuisance abatement order and a November 2008 seizure warrant.

On September 11, 2013, the day trial was scheduled to begin, the trial court (Judge Vineyard) dismissed plaintiff's complaint for negligence and trespass after granting the County's motions in limine to exclude all of plaintiff's evidence concerning the County's alleged deception in obtaining and executing the November 2008 seizure warrant and its failure to issue permits authorizing plaintiff to rehabilitate the structures.  The trial court excluded the evidence on the ground the County was immune from liability for demolishing the structures, even if its employees acted maliciously and without probable cause in obtaining the November 2008 seizure warrant or in refusing to issue discretionary permits.  (Gov. Code, §§ 815.2, 818.4, 820.2, 821.6.)  In sum, the court ruled plaintiff could not prove a viable cause of action against the County for negligence and trespass, and dismissed her complaint.  Days earlier, on September 4, 2013, the trial court (Judge Burkhart) denied plaintiff's noticed motion for leave to amend her complaint to allege five additional causes of action against the County, including a claim that the

County violated her due process right to be given a reasonable opportunity to rehabilitate the structures.

On this appeal, plaintiff claims the trial court abused its discretion, first in denying her motion for leave to amend her complaint and, second, in granting the County's motions in limine to exclude all of the evidence supporting her case against the County. Plaintiff argues she should have been allowed to present a claim against the County for violating her due process right to a reasonable opportunity to rehabilitate her substandard structures—either through her proposed amended complaint stating a due process claim *or* under the guise of her original cause of action for general negligence against the County. (See *Hawthorne Savings & Loan Assn. v. City of Signal Hill* (1993) 19 Cal.App.4th 148, 158-159 (*Hawthorne*) [property owner has due process right to be given a reasonable opportunity to rehabilitate a building a municipality determines to be in substandard condition before the municipality may demolish the building].)

We find no abuse of discretion in the order denying plaintiff's late-filed motion for leave to amend her complaint to allege a due process claim or in the subsequent order granting the County's motions in limine to exclude essentially all of plaintiff's evidence. In sum, the County was immune from liability for plaintiff's originally-pleaded general negligence and trespass claims. (Gov. Code, §§ 815.2, 818.4, 820.2, 821.6.) Further, plaintiff did not have a cause of action against the County for negligence per se, specifically, for violating a mandatory duty to plaintiff under Health and Safety Code section 17980; and plaintiff failed to timely plead a cause of action against the County for

3

violating her due process rights.  We therefore affirm the judgment dismissing plaintiff's original complaint for negligence and trespass.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  *Plaintiff's Allegations and Offers of Proof*[1]

In 1980, plaintiff and her husband purchased adjoining parcels of real property located at 9300 and 9306 Jurupa Road in the City of Riverside.  The 9300 parcel included a building which housed a gas station and a convenience store, an overhead bay cover for the gas station pumps, and a large, 22-foot sign.  The 9306 parcel included an older single-family residence.  Between 1985 and 1988, plaintiff and her husband spent around $291,000 in remodeling the service station.

In 1998, plaintiff and her husband stopped selling gasoline but continued to operate the convenience store until 2003.  In 2005, plaintiff's husband died following a long illness.  By 2005, the County was claiming that the structures on the 9300 parcel were in a substandard condition and that rubbish was accumulating on the property, rendering the property a public nuisance and in violation of county ordinances.  In

---

[1] The facts are stated in the light most favorable to plaintiff, in view of her claims on appeal that the trial court erroneously denied her motion for leave to amend her complaint and, thereafter, erroneously granted the County's motions in limine to exclude evidence supporting her negligence and trespass claims. (See generally *Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1485 [complaint is adequate if its factual allegations support a cause of action on any available legal theory, regardless of whether the cause of action is specifically pleaded].)  At the time of trial, plaintiff either alleged or offered to prove the facts described in this section.

November 2005, the County posted notices of noncompliance on the property and later recorded the notices with the county recorder.

At a July 11, 2006, hearing before the Riverside County Board of Supervisors (the Board), the Board considered whether the structures on the 9300 parcel constituted a public nuisance. On July 25, 2006, the Board determined the structures were a public nuisance and issued written findings of fact and conclusions of law, along with the July 2006 nuisance abatement order. The order directed plaintiff to either (1) demolish the structures on the 9300 parcel or (2) rehabilitate the structures in compliance with county code provisions. The order authorized the County to demolish the structures if plaintiff did not rehabilitate or demolish them within 90 days of the date the order was posted on the property and mailed to plaintiff. The order was posted *and* mailed on October 10, 2006, giving plaintiff until January 8, 2007, to comply with the order.[2]

Plaintiff attended the July 11, 2006, Board meeting but did not speak and did not oppose the nuisance abatement order. In September 2006, plaintiff began remediating the 9300 parcel. In April 2007, she had the underground gasoline storage tanks removed from the 9300 parcel, "with multiple County employees in attendance." Testing for soil contaminations and reporting to the County continued "through the summer" of 2007, but

---

[2] In October 2006, plaintiff attended a separate board meeting concerning the older residence on the 9306 parcel. At that meeting, plaintiff explained to the Board that, though the residence was structurally sound, rehabilitating it did not fit into her plans to repair the structures on the 9300 parcel. Thus, plaintiff agreed to demolish the residence, obtained a county demolition permit, and demolished the residence in August 2007.

no soil contaminations were detected. The costs of removing and disposing of the underground gasoline storage tanks, including soil testing and permits, was over $45,000.

On July 6, 2007, plaintiff and her civil engineer, Rahat Khan, met with a county planning department employee at county offices and submitted an application for a building permit to rehabilitate the structures on the 9300 parcel. The application included plaintiff's engineering drawings and plans to rehabilitate the structures. Plaintiff needed a building permit to rehabilitate the structures in compliance with the rehabilitation option afforded her under the nuisance abatement order. She also needed a conditional use permit (CUP) to reopen the service station and convenience store, because her existing CUP expired after the businesses were closed.

At the July 6, 2007, meeting, the planning department employee told plaintiff and Khan that the County was planning to build a bridge and underpass near the 9300 parcel, and the County "needed to know how much frontage [of the 9300 parcel] would be taken by the bridge project." According to the County employee, the "[b]ridge [d]epartment" (or, apparently, the department of transportation) was responsible for preparing the bridge project plans, and the County would not approve plaintiff's plans to rehabilitate the structures on the 9300 parcel or issue a building permit and other necessary permits to rehabilitate the structures until the bridge department completed the bridge project plans. Plaintiff understood that if the County needed to condemn part of the 9300 parcel for its bridge project the County would not allow plaintiff to rehabilitate the structures or reopen the service station and store.

6

Following the planning department meeting, Khan submitted revised drawings and plans to the planning department—in an effort to account for the impact of the County's bridge project plans on plaintiff's repair and rehabilitation plans. The planning department refused to accept the revised plans on the ground the bridge department had yet to complete the bridge project plans. Khan then "walked" plaintiff's revised plans over to the bridge department, where he was told the County had hired an outside consultant to draw the bridge project plans and the consultant had yet to begin drawing the plans. Khan told the code enforcement department of plaintiff's "predicament," but code enforcement officials insisted that plaintiff demolish the structures or the County would demolish them.

On July 26, 2007, plaintiff's attorney wrote a letter to county counsel advising that plaintiff's civil engineer was working on plans to repair and rehabilitate the structures on the 9300 parcel and that plaintiff was waiting for the County to issue the necessary building permit allowing her to proceed. By August 2008, the County had still not completed its bridge project plans and plaintiff was still waiting for the County to issue the necessary building permit. Meanwhile, the building on the 9300 parcel was secured with a metal guard gate, and its glass windows were unbroken and covered by security bars. Plaintiff incurred over $26,000 in costs for preparing her rehabilitation plans.

In August 2008, the County obtained the first of two seizure warrants—No. MISC2008-083 (the August 2008 seizure warrant), authorizing the County to abate the

nuisance on the 9300 parcel by entering the property and demolishing the structures.[3]  On August 22, 2008, plaintiff filed a complaint against the County in the Riverside County Superior Court, together with an ex parte application for a temporary restraining order (TRO) and preliminary injunction, seeking to prohibit the County from demolishing the structures.  At an August 25 hearing in department 1 of the superior court, the court ordered the parties to attempt to resolve the matter, took the TRO hearing off calendar, and scheduled a status conference on November 24, 2008.  The August 2008 seizure warrant was returned to the court unexecuted, after it expired on September 9, 2008.

The parties attempted to settle the matter but were unsuccessful.  On November 6, 2008, the County appeared ex parte in department 10 of the superior court (while plaintiff's related case was pending in department 1), obtained a second seizure warrant (the November 2008 seizure warrant) and demolished the structures on November 14, 2008.[4]  The County did not notify plaintiff or her counsel of its ex parte application for a second seizure warrant.  The County also failed to inform the court in department 10 of plaintiff's related case and TRO application in department 1.  The County posted a 24-

---

[3]  The August 2008 seizure warrant mistakenly did not identify the 9300 parcel as the subject of the warrant; instead, it listed another property located around six miles from the 9300 parcel as the subject of the warrant.  Plaintiff's counsel informed county counsel of this mistake, "so that the County did not by mistake tear down an innocent parties [*sic*] building . . . ."

[4]  The November 2008 seizure warrant mistakenly listed the 9306 parcel as the property where the structures were to be demolished, but the County demolished the structures on the 9300 parcel.  As noted, plaintiff demolished the residence on the 9306 parcel in April 2007.

hour notice of its intention to demolish the structures on the vacant store building. Plaintiff did not discover that the structures, including the vacant store building, sign, and overhead bay cover, were demolished until around one week after they were demolished on November 24, 2008.

B. *Procedural History*

1. Plaintiff's Original Complaint for Negligence and Trespass

In June 2010, plaintiff filed her present complaint against the County alleging claims for negligence and trespass and seeking money damages based on the County's demolition of the structures on the 9300 parcel. Plaintiff alleged the County "so negligently conducted their building and planning operations and other affairs so as to wrongfully" demolish the structures "in violation of [p]laintiff's property rights therein" and that the County entered the property to demolish the structures "without . . . legal authority." The complaint incorporated plaintiff's government claim against the County (Gov. Code, § 910 et seq.) alleging the facts described above in the light most favorable to plaintiff.

2. The July 30, 2013, Proceedings Before Judge Harold W. Hopp

Trial was scheduled to commence on July 30, 2013. That morning, after reviewing the parties' trial briefs and motions in limine, the trial court (Judge Hopp) addressed the County's first motion in limine to exclude all evidence of plaintiff's attempts to obtain a building permit and other permits from the County in order to repair

9

and restore the structures and the County's alleged refusal to issue a building permit. As plaintiff's counsel put it, the motion sought to "gut" plaintiff's entire case.

The motion sought to exclude all evidence of plaintiff's permit applications and their denials because the County was immune from liability for denying any discretionary permits (Gov. Code, § 818.4 [public entity immune for denial of any discretionary permit]) and the County was also immune for obtaining the seizure warrants and demolishing the structures (Gov. Code, §§ 815.2, subd. (b) [public entity immune from liability for injury resulting from act or omission of its employee, where employee immune from liability], 821.6 [public employee immune from liability for injury caused by instituting or prosecuting judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause], 820.2 [public employee immune from injury resulting from discretionary acts and omissions]).

In opposing the motion, plaintiff's counsel argued the complaint was *not* based on the County's failure to issue any discretionary permits. Instead, it was based on the County's failure to give plaintiff a reasonable opportunity to repair and restore the substandard structures before demolishing them.[5] Plaintiff's counsel argued that the County's refusal to issue the necessary building permit placed plaintiff in an impossible "catch-22" situation: she could not comply with the July 2006 nuisance abatement order

---

[5] The complaint did not name any county employees as defendants.

by restoring the structures because the County would not issue a building permit allowing her to restore the structures.

The County disagreed with plaintiff's version of the facts. The County's attorney, Bruce Disenhouse, offered to prove that on September 30, 2008, plaintiff's counsel faxed a letter to the County's in-house counsel indicating that plaintiff's "financing for the renovation had collapsed," because her bank closed her line of credit and she could no longer afford to repair and restore the structures. The County responded by asking plaintiff's counsel: "We have waited two years. Will you let us on to the property for the purpose of demolishing the structure?" After plaintiff's counsel did not respond to the County's request for plaintiff's permission to enter the 9300 parcel, the County obtained the November 2008 seizure warrant, entered the property, and demolished the structures.

The County also claimed that "a number of [plaintiff's] permit applications were approved," and "[a] couple were denied" because they were incomplete. In any event, the County argued that plaintiff's only remedy for the County's failure to issue any permits was to seek a writ of mandate compelling the County to either issue the permits or allow plaintiff additional time to rehabilitate the structures, but plaintiff never sought a writ despite having had more than two years to do so before the County obtained the November 2008 seizure order and demolished the structures.

The County also argued that plaintiff's reliance on Health and Safety Code section 17980, subdivision (c)—which requires an "enforcement agency" to afford a property owner a reasonable opportunity to repair a substandard building—was misplaced because

11

the statute applied only to *residential* property, and the 9300 parcel was not a residential property.[6]  In sum, the County argued plaintiff could not prove her negligence claim because the County acted intentionally and "did what it did" in demolishing the structures, and plaintiff could not prove her trespass claim because the County's entry onto the 9300 parcel and demolishment of the structures was authorized by the July 2006 nuisance abatement order and the November 2008 seizure warrant.

The court ruled that Health and Safety Code section 17980, subdivision (c), only applied to residential properties and did not apply to plaintiff's commercial property, the 9300 parcel.  Even so, the court recognized that plaintiff had a due process right to a reasonable opportunity to rehabilitate the structures, independent of Health and Safety Code section 17980.  (See *Hawthorne*, *supra*, 19 Cal.App.4th at p. 159.)  The problem, however, was that plaintiff had not alleged that the County violated her due process rights.  At that point, plaintiff moved for leave to amend her complaint to allege a due process violation.

The County opposed the motion on the grounds the complaint for negligence and trespass was filed in June 2010, over three years earlier; plaintiff was only now seeking to allege a "new and different" theory of recovery; and the County prepared for trial based

---

[6] The County argues plaintiff first disclosed she was relying on Health and Safety Code section 17980, subdivision (c) in her opposition to the County's motions in limine. Not so.  The record shows that plaintiff argued the statute applied in her November 2011 opposition to the County's motion for summary judgment, alleging plaintiff's negligence and trespass claims were barred by principles of res judicata based on the November 2008 seizure warrant.

12

on plaintiff's negligence and trespass claims. Thus, the County argued, allowing plaintiff to amend her complaint to allege a due process violation would be "inherently prejudicial" to the County and wholly unsupported by a showing of good cause for the delay in seeking the amendment. Plaintiff's counsel countered that plaintiff's due process claim was based on the same facts supporting her negligence and trespass claims, and there was no need for further discovery. After noting plaintiff was unlikely to survive a motion for nonsuit or directed verdict on her negligence and trespass claims, the court continued the trial to September 6, 2013, in order to allow plaintiff time to file a noticed motion for leave to amend her complaint to allege a due process claim, among other claims, for the County to file a written opposition, and for the motion to be heard and decided *before* trial was to commence on September 6.

    3. The Order Denying the Motion for Leave to Amend

In August 2013, plaintiff filed her noticed motion to amend her complaint for negligence and trespass to add five more causes of action: (1) violation of her due process rights, or "constitutional tort for damages" (third cause of action), (2) "deprivation of civil rights under color of law" (42 U.S.C. § 1983) (fourth cause of action), (3) "unjustified and unlawful exercise of police power in destroying property" (fifth cause of action), (4) violation of Health and Safety Code section 17980, subdivision (c) (sixth cause of action), and (5) "inverse condemnation" (seventh cause of action). (Capitalization omitted.) The County vehemently opposed the motion. The motion was heard and denied by Judge Burkhart on September 4, 2013.

13

At the hearing, the County argued plaintiff's proposed new claims would require trial to be delayed well past September 6, so that the County could file a demurrer and, if necessary, a summary judgment motion if plaintiff was granted further leave to amend. The County argued the proposed amended complaint was based on new theories of federal constitutional and statutory law and would require county personnel from the "building and safety" department to be deposed regarding the County's failure to issue a building permit.

Plaintiff's counsel offered no reason why plaintiff did not seek to amend her complaint earlier, explaining only that he believed plaintiff's negligence and trespass claims were sufficient. Counsel argued no additional discovery would be necessary because plaintiff's new theories of recovery were based on the same evidence previously discovered in the action.

4. The Rulings on the County's Motions in Limine

On September 11, 2013, the day trial was to commence on plaintiff's original complaint against the County for negligence and trespass, the County orally moved to exclude all evidence concerning the County's application for and execution of the November 2008 seizure warrant on the ground that, if Health and Safety Code section 17980, subdivision (c) did not apply (and if the County, therefore, had no mandatory, statutory duty to give plaintiff a reasonable time to rehabilitate the structures), then the County was immune from liability for plaintiff's negligence and trespass claims, even if county employees acted maliciously and without probable cause in obtaining the

14

November 2008 seizure warrant. (Gov. Code, §§ 815.2, subd (b), 821.6.) The trial court (Judge Vineyard) granted the oral motion in limine, along with the County's original motion in limine to exclude all evidence of plaintiff's attempts to obtain a building and other permits allowing her to rehabilitate the structures.

After reviewing the statute in the statutory context in which it appeared, the trial court ruled that Health and Safety Code section 17980, subdivision (c) did not apply to plaintiff's commercial property because it only applied to residential properties. Thus, the statute did not impose a mandatory, nondiscretionary duty on the County to give plaintiff a reasonable time to repair or restore the structures.

The statute provides, in part: "The owner shall have the choice of repairing or demolishing," and if the owner chooses to repair, the statute requires the enforcement agency to "require that the building be brought into compliance *according to a reasonable and feasible schedule for expeditious repair*." (Health & Saf. Code, § 17980, subd. (c), italics added.) The court explained that the "practical effect" of its ruling that the statute did not apply was to exclude all of plaintiff's proffered evidence supporting her general negligence and trespass claims. The court reasoned that the County was immune from liability for demolishing the structures, even if its employees acted maliciously and without probable cause in obtaining the November 2008 seizure warrant or in refusing to issue plaintiff any discretionary permits. (Gov. Code, §§ 815.2, 818.4, 820.2, 821.6.) Thus, the trial court ruled that plaintiff could not prove her general negligence or trespass causes of action against the County and dismissed the complaint.

15

### III. ANALYSIS

Plaintiff claims the trial court abused its discretion both in denying her motion for leave to amend her complaint *and* in granting the County's motions in limine to exclude the evidence of the County's refusal to issue a building permit and its actions in obtaining the November 2008 seizure warrant. We conclude the motion for leave to amend was properly denied and the motions in limine were properly granted. We first address the order denying plaintiff leave to amend.

A. *The Motion for Leave to Amend Was Properly Denied*

Code of Civil Procedure section 473, subdivision (a)(1) authorizes a trial court, "in furtherance of justice," to "allow a party to amend any pleading . . . ." The court's ruling on a motion to amend a pleading is reviewed on appeal for an abuse of discretion, and the party challenging the ruling has the burden of showing the ruling was an abuse of discretion. (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097.)

"Generally, 'the trial court has wide discretion in determining whether to allow the amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: "*including the conduct of the moving party and the belated presentation of the amendment.* [Citation.] . . ."'" (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*, *supra*, 130 Cal.App.4th at p. 1097.) While "[c]ourts must apply a policy of liberality in permitting amendments at any stage of the proceeding, including during trial, when no prejudice to the opposing party is shown[,] [citation] . . . ""[the]

16

unwarranted delay in presenting [the amendment] may—of itself—be a valid reason for denial.'"'" [Citations.]" (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.)

"'Thus . . . appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is "'offered after long unexplained delay . . . or where there is a lack of diligence . . . .'"' [Citation.]" (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377.) "Where the trial date is set, the jury is about to be impaneled, counsel, the parties, the trial court, and the witnesses have blocked the time, and the only way to avoid prejudice to the opposing party is to continue the trial date to allow further discovery, refusal of leave to amend cannot be an abuse of discretion." (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 488.)

Here, the trial court did not abuse its discretion in denying plaintiff's late-filed motion for leave to amend her original complaint for negligence and trespass to allege five new and additional theories of recovery against the County, including a violation of plaintiff's due process rights. The motion was filed in August 2013, more than three years after plaintiff filed her original complaint in June 2010, and after trial was to commence on July 30, 2013. As the County argued, granting the motion would have been prejudicial to the County because it would have required the County to conduct further discovery and would have substantially delayed the trial. (*Magpali v. Farmers Group, Inc.*, *supra*, 48 Cal.App.4th at p. 488.)

Contrary to plaintiff's claim that no additional discovery was necessary, the record supports a contrary conclusion. Plaintiff was attempting to allege, for the first time, that the County's failure to issue building and other permits allowing plaintiff to rehabilitate her structures was not only negligent but also violated plaintiff's due process rights. The County explained that no employees from the County's "building and safety" department had been deposed, and the County had prepared to defend plaintiff's negligence and trespass claims based on testimony from county code enforcement personnel and county counsel. Further, before moving for leave to amend, plaintiff was claiming the County's failure to issue permits violated the County's duty under Health and Safety Code section 17980, subdivision (c) to afford plaintiff a reasonable opportunity to rehabilitate the structures. Plaintiff never mentioned proceeding against the County based on a potentially broader, constitutional due process claim.

Lastly, plaintiff's counsel offered no reason for plaintiff's over three-year delay in seeking to allege her due process and other new claims—other than that he thought plaintiff's original complaint for negligence and trespass was sufficient. Thus, on this record, the motion for leave to amend was properly denied. (See *Hayutin v. Weintraub* (1962) 207 Cal.App.2d 497, 504-507 [leave to amend complaint on eve of trial properly denied where plaintiff sought to allege five new and different theories of liability].)

B. *The County's Motions in Limine Were Properly Granted*

A motion in limine to exclude *all* evidence is akin to a motion for nonsuit, which "concedes the truth of the facts proved, but denies as a matter of law that they sustain the

18

plaintiff's case. A trial court may grant a nonsuit only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff, and indulging in every legitimate inference which may be drawn from the evidence, the court determines there is *no* substantial evidence to support a judgment in the plaintiff's favor. [Citations.]" (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27-28.)

On appeal from an order granting a motion for nonsuit—or, as here, a motion in limine to exclude all evidence offered to support the plaintiff's case—"[w]e are bound by the same rules as the trial court. . . . [W]e must view the evidence most favorably to [plaintiff], resolving all presumptions, inferences and doubts in [her] favor, and uphold the judgment for [the County] only if it was required as a matter of law." (*Edwards v. Centex Real Estate Corp.*, *supra*, 53 Cal.App.4th at p. 28.)

The order granting the County's motions in limine to exclude *all* of plaintiff's evidence concerning the County's alleged refusal to issue permits and its deceptive actions in obtaining the November 2008 seizure warrant was tantamount to an order granting a motion for nonsuit on plaintiff's negligence and trespass claims. The motions were properly granted because the evidence, viewed in the light most favorable to plaintiff, was insufficient to support plaintiff's negligence and trespass claims because the County was immune from liability for the claims.

1. The County Was Immune from the General Negligence and Trespass Claims

In her original complaint for general negligence and trespass, plaintiff alleged only that the County "so negligently conducted [its] building and planning operations and

19

other affairs so as to wrongfully" demolish the structures "in violation of [p]laintiff's property rights therein" and that the County entered her property to demolish the structures "without . . . legal authority." The gravamen of the complaint is that the County wrongfully demolished plaintiff's structures pursuant to the November 2008 seizure warrant, and was liable to plaintiff in damages for demolishing the structures.

The County was immune from liability for demolishing the structures—even if its employees acted maliciously and without probable cause in obtaining and executing the November 2008 seizure warrant. (Gov. Code, §§ 815.2, subd. (b) [public entity immune from liability for injury resulting from act or omission of its employee, where employee immune from liability], 821.6 [public employee immune from liability for injury caused by instituting or prosecuting judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause].) The County was also immune from liability to plaintiff for failing to issue any discretionary permits. (Gov. Code, §§ 818.4 [public entity immune for denial of any discretionary permit], 820.2 [public employee immune from injury resulting from discretionary acts and omissions].)

2. Plaintiff Had No Claim Against the County for Negligence Per Se

The trial court also recognized plaintiff was effectively alleging a cause of action against the County for negligence per se based on the County's violation of Health and Safety Code section 17980, subdivision (c) in failing to afford plaintiff a reasonable opportunity to rehabilitate the structures after the Board determined the structures were in

20

a substandard condition.[7]  But the court concluded that the statute applied only to residential properties, not commercial properties, including the 9300 parcel.  Thus, the court ruled that plaintiff did not have a viable claim against the County for negligence per se.  We agree.  (*People ex. rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632 [appellate court independently reviews proper interpretation of a statute].)

Health and Safety Code section 17980 requires any "enforcement agency" to afford a property owner a reasonable opportunity to repair "a building" determined to be in substandard condition.  (Health & Saf. Code, § 17980, subds. (a), (c).)  Subdivision (c) of the statute provides, in part:  "The owner shall have the choice of repairing or demolishing.  However, if the owner chooses to repair, the enforcement agency shall require that the building be brought into compliance according to a reasonable and feasible schedule for expeditious repair.  The enforcement agency may require vacation and demolition or may itself vacate the building, repair, demolish, or institute any other appropriate action or proceeding, if any of the following occur:  [¶]  (A)  The repair work is not done within the period required by the notice.  [¶]  (B)  The owner does not make a timely choice of repair or demolition.  [¶]  (C)  The owner selects an option which cannot be completed within a reasonable period of time, as determined by the enforcement

---

**7**  Apparently, the trial court treated plaintiff's first cause of action for general negligence as two causes of action:  a first for general negligence and a second for negligence per se. The court referred to plaintiff's trespass claim as her "third" cause of action, but in her original complaint it is pleaded as her second cause of action following her first cause of action for general negligence.

21

agency, for any reason, including, but not limited to, an outstanding judicial or administrative order." (Health & Saf. Code, § 17980, subd. (c)(1).)

Plaintiff argues the statute's reference to "a building" (Health & Saf. Code, § 17980, subd. (a)) means it applies to "any" building, including commercial buildings. But as the trial court pointed out, section 17980 is part of division 13 of the Health and Safety Code, titled "Housing" (Health & Saf. Code, § 17000 et seq.), and part 1.5, titled "Regulation of Buildings Used for Human Habitation" (Health & Saf. Code, §§ 17910-17998.3). As the trial court concluded, the context in which Health and Safety Code section 17980 appears indicates that the statute applies only to residential buildings, or buildings used for human habitation, not commercial properties.

Health and Safety Code section 17912, titled "Application of rules, regulations and building standards to existing buildings," further indicates that Health and Safety Code section 17980 applies only to buildings used for human habitation. It states, in part, that "rules, regulations, and building standards relating to use, maintenance, and change of occupancy shall apply to all hotels, motels, lodginghouses, apartment houses, and dwellings . . . approved for construction or constructed before or after the effective date of such rules, regulations, or building standards." (Health & Saf. Code, § 17912.) Finally, Health and Safety Code section 17920 defines "building" as "a structure subject

22

to this part," meaning part 1.5, titled "Regulation of Buildings Used for Human Habitation."**8**

    3.  <u>Plaintiff Could Not Prove a Due Process Claim Against the County Because Her Motion for Leave to Amend Was Properly Denied</u>

Plaintiff maintains she had a *due process* right to a reasonable opportunity to rehabilitate the structures on the 9300 parcel after the Board determined the structures were substandard—even if Health and Safety Code section 17980, subdivision (c) did not apply because it applies only to residential properties. This is the primary thrust of plaintiff's challenge to the trial court's grant of the County's motions in limine.

We agree that plaintiff had a due process claim against the County for *allegedly* failing to give her a reasonable opportunity to rehabilitate the structures, even though Health and Safety Code section 17980, subdivision (c) did not apply. (*Hawthorne*, *supra*, 19 Cal.App.4th at pp. 158-159; see also *D & M Financial Corp. v. City of Long Beach* (2006) 136 Cal.App.4th 165, 174-175.) In *Hawthorne*—a case involving a challenge to an order by the City of Signal Hill requiring the demolition of substandard *residential* buildings—the court observed that, "prior to ordering demolition, the City had a *constitutional* and statutory duty to first afford Hawthorne [the owner] the choice of

---

**8** For the first time on this appeal, plaintiff claims the County also violated chapter 15.20, section 403, of the Uniform Code for the Abatement of Dangerous Buildings, which the County adopted pursuant to Riverside County Ordinance No. 457.93. Because plaintiff did not raise this claim in the trial court, she may not raise it here. (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873 [party may not adopt new and different theory on appeal].)

repairing or demolishing the buildings, a reasonable time in which to make that choice *and, if Hawthorne chose to repair, a reasonable opportunity to do so*." (*Hawthorne*, *supra*, 19 Cal.App.4th at p. 158, italics added.)

The *Hawthorne* court quoted from *Miles v. District of Columbia* (D.C. Cir. 1975) 510 F.2d 188, where the court observed at page 192: "'A municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health. However, that municipality must, before destroying a building, give the owner sufficient notice, a hearing and ample opportunity to demolish the building himself or to do what suffices to make it safe or healthy; such a procedure is the essence of the governmental responsibility to accord due process of law.'" (*Hawthorne*, *supra*, 19 Cal.App.4th at p. 159.) The *Hawthorne* court also pointed out that, in enacting Health and Safety Code section 17980, subdivision (b), the predecessor provision to subdivision (c), "California . . . codified the property owner's *constitutional* right to choose repair or demolition." (*Hawthorne*, *supra*, at p. 159, italics added.) Thus, plaintiff had a due process right to a reasonable opportunity to rehabilitate the structures on the 9300 parcel after the Board determined the structures were substandard. (*Id*. at pp. 158-159.)

Plaintiff maintains the County violated her due process right to be given a reasonable opportunity to rehabilitate the structures because the County refused to issue the building and other permits she needed to rehabilitate the structures, until the County completed its bridge project plans—then the County obtained the November 2008 seizure

warrant and demolished the structures before it completed its bridge project plans. But the problem, as Judge Hopp pointed out, was that plaintiff did not allege a deprivation of her due process rights in her original complaint for negligence and trespass. And, for the reasons discussed, plaintiff was properly denied leave to amend her complaint, on the eve of trial, to allege a due process claim against the County, among other new claims. Thus, even if plaintiff could have presented evidence sufficient to support a claim against the County for violating her due process rights, the County's motions in limine to exclude essentially all of plaintiff's evidence were properly granted.

In ruling on the motions in limine, the trial court (Judge Vineyard) was properly unconcerned with whether the evidence supported a due process claim against the County and solely concerned with whether it supported a claim for negligence or trespass, based on the allegations of plaintiff's original complaint. As discussed, the court correctly concluded, and plaintiff does not dispute, that the County was immune from liability for plaintiff's general negligence and trespass claims. In addition, plaintiff had no claim against the County for negligence per se—that is, for violating a mandatory, statutory duty to give plaintiff a reasonable opportunity to rehabilitate the substandard structures. In sum, plaintiff failed to timely plead her due process claim, and was properly precluded from proceeding on her due process claim.

## IV.  DISPOSITION

The judgment is affirmed. The parties shall bear their respective costs on appeal. (Cal. Rules of Court, rule 8.278.)

25

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.